739 So.2d 468 (1999)
Rogaster SHANNON a/k/a Roegaster Carver Shannon, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00550-COA.
Court of Appeals of Mississippi.
April 20, 1999.
*469 Jack R. Jones, III, Southaven, Attorney for Appellant.
Office of the Attorney General by W. Glenn Watts, Attorney for Appellee.
BEFORE KING, P.J., BRIDGES, AND LEE, JJ.
KING, P.J., for the Court:
¶ 1. Rogaster Shannon appeals his conviction of possession of a controlled substance raising the following issues as error: 1) the trial court erred in overruling the motion for mistrial; 2) the trial court erred in refusing instruction D-1; 3) the trial court erred in overruling the motion to suppress evidence; and 4) the State failed to prove venue. Finding no error, we affirm.

FACTS
¶ 2. On February 9, 1997, Officer Kimmons Gray, with the Hernando Police Department, was patrolling downtown Hernando after midnight. While patrolling, Gray passed the Brahms building and noticed an automobile parked in a lot next to the building. Officers had been asked to keep loiterers off the lot.
¶ 3. Gray approached the vehicle and noticed someone sitting in the passenger seat and someone walking toward the car. The officer said he recognized Shannon as the person walking toward the vehicle. Gray asked Shannon what they were doing there, and Shannon replied that he was going to go get a hotel room. Gray testified he patted Shannon down for weapons, but since he was unable to feel under Shannon's coat, he asked Shannon to empty his pockets. When Shannon emptied his pockets, he placed a "straight shooter" on the hood. A straight shooter is a metal tube with steel wool in one end that facilitates the smoking of illegal substances. Gray also noticed that Shannon dropped something on the ground near him. Gray waited for backup to arrive and asked Officer Shane Ellis to see what was dropped. Ellis found what appeared to be a rock of crack cocaine.
¶ 4. Shannon testified in his own behalf. He denied that the crack cocaine was his, but rather, since several people are known to walk through the area everyday, someone else might have dropped the crack cocaine.
*470 ¶ 5. After deliberations, the jury returned a verdict of guilty of possession of a controlled substance. At the sentencing hearing, the judge determined that Shannon had no prior felonies and his crime warranted three years supervised probation.

DISCUSSION

I.

THE TRIAL COURT ERRED IN OVERRULING THE MOTION FOR MISTRIAL
¶ 6. Prior to trial, Shannon's counsel made a motion in limine to exclude any references to prior criminal activity. His motion was granted.
¶ 7. During direct examination, Officer Gray stated that he knew Shannon prior to the night in question. Gray testified that he knew Shannon did not live close to the Brahms building, but rather, he lived on Caffey Street. Gray then stated that he knew Shannon lived on Caffey Street from a previous traffic stop. Defense counsel objected and moved for a mistrial. The trial judge overruled the motion but instructed the jury to disregard Gray's statement.
¶ 8. If such an innocuous statement could be considered error, any mistake that occurred was remedied by the trial judge's instruction. The granting of a motion for a mistrial is within the sound discretion of the trial judge. Hoops v. State, 681 So.2d 521, 528 (Miss.1996). Where the trial judge sustains appellant's objection to the testimony and instructs the jury to disregard same, prejudicial error does not result from that testimony. Shelby v. State, 402 So.2d 338 (Miss.1981). The statement complained of was unresponsive to the question asked. The Mississippi Supreme Court found in Bullock v. State, 391 So.2d 601, 609 (Miss.1980), that reversible error does not occur where a witnesses response is unresponsive to a question asked by a prosecutor, if certain procedures are followed. Those procedures were followed in the instant case. A jury is presumed to follow the instructions of the trial judge. Hoops, 681 So.2d at 529, Cabello v. State, 490 So.2d 852, 857 (Miss.1986). Since the jury is presumed to have followed the admonition of the trial judge to disregard Gray's remark, there is no merit to Shannon's contention that the remark constituted reversible error.

II.

THE TRIAL COURT ERRED IN DENYING INSTRUCTION D-1
¶ 9. In his second point of error, Shannon argues the trial court erred when it refused to instruct the jury on the lesser-included-offense of possession of drug paraphernalia. During the trial Officer Gray testified that Shannon pulled a "straight shooter" out of his pocket and placed it upon the hood of the vehicle.
¶ 10. In Sanders v. State, 479 So.2d 1097, 1108 (Miss.1985), the Mississippi Supreme Court set out the test for determining whether one offense is a lesser-included-offense of another. "[I]n order to authorize [a lesser-included-offense] instruction the more serious offense must include all the elements of the lesser offense, that is, it is impossible to commit the greater offense without at the same time committing the lesser included offense." Id. Thus, possession of paraphernalia may be a lesser-included-offense of possession of cocaine only if all of the elements of possession of paraphernalia also include all of the elements of possession of cocaine. There is no comparison between the two. The State need not prove possession of drug paraphernalia to convict for possession of a controlled substance. Each offense has elements which are unique to that offense and exclusive to the other. Because possession of paraphernalia is not a lesser-included-offense of possession of cocaine no lesser-included-offense instruction can be given. Murrell *471 v. State, 655 So.2d 881, 886 (Miss. 1995). Shannon was not entitled to a lesser-included-offense instruction. There is no merit to this assignment of error.

III.

THE TRIAL COURT ERRED IN OVERRULING SHANNON'S MOTION TO SUPPRESS
¶ 11. Defense counsel moved the trial court to suppress the contraband found on the basis that the search was without color of law and was illegal. Shannon argues that the search was illegal because he was committing on crime when confronted by the officer. There was no consent to the search. He was not close to the officer. There was no probable cause.
Police activity in preventing crime, detecting violations, making identifications, and in apprehending criminals may be divided into three types of action: (1) Voluntary conversation: An officer may approach a person for the purpose of engaging in a voluntary conversation no matter what facts are known to the officer since it involves no force and no detention of the person interviewed; (2) Investigative stop and temporary detention: To stop and temporarily detain is not an arrest, and the cases hold that given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest; (3) Arrest: An arrest may be made only when the officer has probable cause.
Singletary v. State, 318 So.2d 873, 876 (Miss.1975).
¶ 12. The situation in the case sub judice falls either under the first or second type of action. Here, Officer Gray received information to be on the lookout for loiterers around the Brahms building. On February 9, 1997, after midnight, Gray spotted a vehicle parked in a driveway behind the building. As Gray testified the incident occurred, "in the middle of the night, this is something that we look at as possibly suspicious when you have someone sitting in a car on a vacant lot behind a business establishment in the wee house of the morning." Gray further testified that for safety, "I patted him down for weapons. Well, Mr. Shannon had a coat on, and there are times when you pat someone down, if they have a coat on, that you could possibly miss something. So I asked Mr. Shannon ... `If you don't mind, could you empty the contents of your pockets on the trunk of the car there?'"
¶ 13. Police officers have the authority to detain a person without actually arresting him for investigatory purposes. Haddox v. State, 636 So.2d 1229, 1234 (Miss.1994). "[G]iven reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest." Estes v. State, 533 So.2d 437, 441 (Miss.1988) (quoting Griffin v. State, 339 So.2d 550, 553 (Miss.1976)). A reasonable suspicion is all that is required to effectuate a "stop and frisk." Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). When a "reasonable investigatory stop" is conducted, an officer is authorized to "conduct a weapons search limited in scope" to the discovery of concealed weapons. Singletary v. State, 318 So.2d 873, 877 (Miss.1975).
¶ 14. We hold that the seizure of the cocaine was the result of a valid investigative stop. The seized cocaine was not the fruit of an illegal arrest. What emerged was a temporary, investigatory stop, or a voluntary conversation, that was reasonable under the circumstances. Therefore, we hold that the trial court did not err in admitting into evidence the crack cocaine.

IV.

THE STATE FAILED TO ESTABLISH VENUE
¶ 15. It is clear that the State adequately established venue in this case. During the direct examination of Gray, the *472 prosecution asked where Gray was located when the incident occurred with Shannon. Gray responded in DeSoto County, Mississippi.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE AND SENTENCE OF THREE YEARS PROBATION IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $1,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
BRIDGES, DIAZ, LEE, AND PAYNE, JJ., CONCUR.
McMILLIN, C.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., COLEMAN, IRVING, AND THOMAS, JJ.
McMILLIN, C.J., CONCURRING:
¶ 17. I concur in the result reached by the majority. I write separately out of concern that the majority's writing in Section III could be construed to suggest that a police command to a suspect to empty his pockets during a brief investigatory stop is a permissible police activity under the reasoning of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). It would be my view that, absent some special circumstance, such a directive would be too intrusive to pass constitutional muster under the reasoning in Terry v. Ohio.
¶ 18. Nevertheless, in this case, I do not think it is necessary to reach the question of whether special circumstances existed that would permit a more intrusive nonconsensual search than a Terry pat down. Rather, I believe the question of the admissibility of the cocaine can be decided against Shannon on other grounds.
¶ 19. Certainly, the officer was authorized to make a brief investigatory stop of this defendant and, for his own protection, to conduct a Terry pat down for weapons. The officer testified that the weapons pat down was inconclusive because of the bulky nature of Shannon's clothing and that, at that point, he asked Shannon to voluntarily empty his pockets. Without question, Shannon could have refused that request, but there is no requirement that the officer advise Shannon, in Miranda-like fashion, of his right to refuse before making the request. (See Jones v. State, 607 So.2d 23, 28 (Miss.1991). "The State is not required to demonstrate knowledge [of the right to refuse a request for a consensual search].") Should a suspect refuse to voluntarily empty his pockets, it would seem reasonable that the detaining officer, still unsure of whether the individual was armed even after completing the pat down, could take additional precautions to ensure his safety while he completed his investigative stop. It may well be the case, depending on the particular facts, that those additional precautions might include a command to an uncooperative suspect to empty out the contents of his pockets.
¶ 20. In this case, however, there is no need to consider the propriety of a nonconsensual escalation of a weapons search after an inconclusive Terry pat down. The officer testified that Shannon agreed to empty his pockets and the trial court affirmatively found at the suppression hearing that Shannon's actions in doing so were voluntary. It was during the course of voluntarily complying with the officer's request to empty his pockets that Shannon dropped an item to the ground that later proved to be a rock of crack cocaine.
¶ 21. There is no basis for this Court to conclude that the trial court was manifestly wrong when it found that Shannon had consented to empty his pockets when requested to do so by the officer. Therefore, the cocaine discovered during the course of Shannon's compliance with the officer's request cannot be seen as the product of a constitutionally unreasonable search.
*473 SOUTHWICK, P.J., COLEMAN, IRVING, AND THOMAS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.