876 So.2d 353 (2004)
Gregory Scott WILLIAMSON
v.
STATE of Mississippi.
No. 2003-IA-01456-SCT.
Supreme Court of Mississippi.
July 1, 2004.
J. Stewart Parrish, Meridian, Attorney for Appellant.
Office of the Attorney General by Wayne Snuggs, Attorney for Appellee.
*354 EN BANC.

ON PETITION FOR PERMISSION TO APPEAL
DICKINSON, Justice, for the Court.
¶ 1. Pursuant to M.R.A.P.5, we grant Gregory Scott Williamson's petition to bring this interlocutory appeal, and we consider the merits of that appeal. This is an interlocutory appeal of a trial judge's order denying the defendant's motion to suppress evidence obtained as a result of an anonymous tip. Because we find the actions of the law enforcement officials were lawful and reasonable, we affirm and remand.

BACKGROUND FACTS
¶ 2. At 9:36 a.m., on August 27, 2002, Agent Overstreet of the South Mississippi Drug Task Force heard over his police radio from the dispatcher for the Police Department of the City of Waynesboro, the following information: (1) two white males had come into Campbell's Big Star and purchased "large quantities" of Pseudoephedrine (also known as Sudafed); (2) these two individuals had also attempted to purchase Sudafed from the Family Dollar Store; (3) The two white males left Campbell's Big Star in a white van with license number 4BA 347, and headed west on Highway 84, also known as Azalea Drive.
¶ 3. Overstreet understood that the information obtained from the dispatcher was provided to the police department from the two retail stores, but the identity of the callers was unknown.
¶ 4. In response to the information, Overstreet proceed to Azalea Drive, where he spotted a white van in the parking lot of Fred's Dollar Store (also known to sell Sudafed). After verifying that the white van had two white males inside, and the tag number matched the number provided to the police, Overstreet called for back-up. When it arrived, he pulled up behind the van, got out of his vehicle and walked up to the van.
¶ 5. Overstreet requested the driver (Gregory Scott Williamson) to produce his driver's license, and informed the suspects that two Waynesboro stores had informed the police that two white males had purchased, or attempted to purchase, pseudoephedrine. When asked why they were purchasing Sudafed in Waynesboro when they lived in Petal, the suspects provided "evasive" responses.
¶ 6. Overstreet then asked the occupants of the van, including Williamson, to exit the van and, upon further questioning, concluded that the occupants were continuing to provide evasive answers. He then requested consent to search the van, informing Williamson that if permission was not granted, a search warrant would be obtained. Williamson consented.
¶ 7. Upon searching the van, Overstreet discovered several boxes of Sudafed and a fuel additive alcohol (gas treatment). Both these chemicals constitute "precursors" used in the illegal manufacture of controlled substances. See Miss.Code Ann. § 41-29-313(1)(a)(i). Additionally, Overstreet discovered receipts from several Waynesboro stores for Sudafed purchases. The receipt from Campbell's Big Star was time-stamped at 9:16 a.m.

ANALYSIS
¶ 8. Williamson does not challenge the search of the van. The issue he presents us is "whether an anonymous tip which gives a vehicle description, direction of travel, and tag number, provides a sufficient basis for police officers who have independently observed no indication of *355 ongoing or imminent criminal activity to make a stop...."
¶ 9. Facing a similar set of facts and speaking through Presiding Judge (now Chief Judge) King, the Court of Appeals provided an excellent analysis in Shannon v. State, 739 So.2d 468 (Miss.Ct.App.1999). Rejecting a motion to suppress evidence obtained by a police officer who questioned the defendant without probable cause for an arrest, id. at 471, Judge King quoted with approval the following language:
Police activity in preventing crime, detecting violations, making identifications, and in apprehending criminals may be divided into three types of action: (1) Voluntary conversation: An officer may approach a person for the purpose of engaging in a voluntary conversation no matter what facts are known to the officer since it involves no force and no detention of the person interviewed; (2) Investigative stop and temporary detention: To stop and temporarily detain is not an arrest, and the cases hold that given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest; (3) Arrest: An arrest may be made only when the officer has probable cause.
Singletary v. State, 318 So.2d 873, 876 (Miss.1975). In Shannon the Court of Appeals then stated:
Police officers have the authority to detain a person without actually arresting him for investigatory purposes. Haddox v. State, 636 So.2d 1229, 1234 (Miss.1994). "[G]iven reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest." Estes v. State, 533 So.2d 437, 441 (Miss.1988) (quoting Griffin v. State, 339 So.2d 550, 553 (Miss.1976)). A reasonable suspicion is all that is required to effectuate a `stop and frisk'. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Shannon, 739 So.2d at 471.
¶ 10. The United States Supreme Court has held that "there are situations in which an anonymous tip, suitably corroborated, exhibits `sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" Florida v. J.L., 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (quoting Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)).
¶ 11. This Court has also held that "[r]easonable cause for an investigatory stop may be based on an officer's personal observation or on an informant's tip if it bears indicia of reliability." Floyd v. City of Crystal Springs, 749 So.2d 110, 118 (Miss.1999). "Reasonable suspicion is dependent upon the content of the information possessed by the detaining officer as well as its degree of reliability." Id. "Both factors  quantity and quality  are considered in the `totality of the circumstances'." Id.
¶ 12. Also, in Floyd v. State, 500 So.2d 989 (Miss.1986), this Court stated that:
[a]n investigatory stop may be made even where officials have no probable cause to make an arrest as long as they have "reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony ... or `some objective manifestation that the person stopped is, or is about to be engaged in criminal activity.'"
Id. at 992 (quoting McCray v. State, 486 So.2d 1247, 1249-50 (Miss.1986)).
¶ 13. The information provided to Overstreet included the color of the van, the *356 number and race of occupants, the license plate number and the direction of travel, including the name of the street. All of these details were verified by Overstreet prior to the investigatory questioning.
¶ 14. Overstreet testified that retail stores frequently call the police department when customers purchase, or attempt to purchase, large quantities of Sudafed.
¶ 15. At the suppression hearing, the trial judge observed that
[a] retail establishment has a vested interest in being truthful in their dealings with authorities as they are an integral part of the community. There was a description of the van, with the occupants, with a specific tag number headed West on Azaelea Drive. Agent Overstreet had sufficient information in the form of this tip to have a reasonable suspicion that the Defendants had committed a crime.
We find no error in that decision.

CONCLUSION
¶ 16. The trial court in the case sub judice found that the stop was based upon reliable information and was reasonable. We agree. Therefore, we affirm the trial court's denial of the motion to suppress evidence, and we remand this case to the trial court for further proceedings consistent with this opinion.
¶ 17. AFFIRMED AND REMANDED.
SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.
GRAVES, Justice, Dissenting.
¶ 18. This is an interlocutory appeal of the Wayne County Circuit Court's denial of a motion to suppress evidence obtained pursuant to an illegal stop. The majority of this Court ignores clearly established precedent and carves out new standards in what appears to be an attempt to address the social problem created by the manufacture and use of illegal drugs. The majority apparently intends to silently overrule a long line of cases from both this Court and the United States Supreme Court and to encourage government intrusion into the lives of private citizens without probable cause. While I agree that there is a serious social problem, I respectfully submit that violating constitutional rights to achieve a desired result is not the appropriate course of action. Because I disagree and find that the illegally obtained evidence should be suppressed, I must respectfully dissent.
¶ 19. The Fourth Amendment to the United States Constitution and Article 3, Section 23 of the Mississippi Constitution express a person's right to be secure from unreasonable searches and seizures, including investigatory stops of a vehicle. Investigatory stops are permitted if the officer has a reasonable suspicion, grounded in specific and articulable facts, that the suspect was involved in or is wanted in connection with a felony. See United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Floyd v. City of Crystal Springs, 749 So.2d 110 (Miss.1999); Floyd v. State, 500 So.2d 989 (Miss.1986). See also United States v. Morales, 191 F.3d 602 (5th Cir.1999); McCray v. State, 486 So.2d 1247 (Miss.1986).
¶ 20. Law enforcement officers in Wayne County received an anonymous tip that two white males in a white van had *357 bought a large quantity of over-the-counter sinus medicine containing pseudoephedrine (Sudafed) from Campbell's Big Star in Waynesboro. The tip included a vehicle tag number. Based on the anonymous tip, law enforcement officers stopped Williamson.
¶ 21. Williamson was charged with possessing two precursor chemicals under § 41-29-313(1).
(1)(a) Except as authorized in this section, it is unlawful for any person to knowingly or intentionally:
(i) Purchase, possess, transfer or distribute any two (2) or more of the listed precursor chemicals or drugs in any amount with the intent to unlawfully manufacture a controlled substance;
(ii) Purchase, possess, transfer or distribute any two (2) or more of the listed precursor chemicals or drugs in any amount, knowing or under circumstances where one reasonably should know, that the listed precursor chemical or drug will be used to unlawfully manufacture a controlled substance;
(b) Any person who violates this subsection (1), upon conviction, is guilty of a felony and may be imprisoned for a period not to exceed thirty (30) years and shall be fined not less than Five Thousand Dollars ($5,000.00) nor more than One Million Dollars ($1,000,000.00), or both fine and imprisonment.
Miss.Code Ann. § 41-29-313(1) (Rev.2002) (emphasis added). Further, the statute sets out:
(2)(c) It is unlawful for any person to purchase, possess, transfer or distribute two hundred fifty (250) dosage units or fifteen (15) grams in weight (dosage unit and weight as defined in Section 41-29-139) of pseudoephedrine or ephedrine, knowing, or under circumstances where one reasonably should know, that the pseudoephedrine or ephedrine will be used to unlawfully manufacture a controlled substance.
Miss.Code Ann. § 41-29-313(2) (Rev.2002). (emphasis added).
¶ 22. The anonymous tipster did not convey any specific dosage amount, that the suspects had purchased any other precursor chemical or that the suspects had indicated an intent or knowledge that the Sudafed was going to be used to illegally manufacture a controlled substance. The tip was that Williamson bought or attempted to buy large amounts of Sudafed, which, in and of itself, is not illegal. The tip did not relay any factual basis to reasonably believe that Williamson was engaged in or about to engage in a felony.
¶ 23. The majority finds that the stop was reasonable. I disagree. The stop was based on an anonymous tip that did not convey any criminal activity. The majority relies on the trial court's finding that a retail establishment has a vested interest in being truthful and that the anonymous tip should therefore be reliable. There is no definitive evidence before us that the call even came from an employee of the retail establishment.
Overstreet stated that he did not know who had called the police department, but that it was not a coded confidential informant who had given credible information in the past.

Order of June 3, 2003, at 4 (emphasis added). Nevertheless, even if the informant was identified, the tip alone would not be sufficient to establish a factual basis to reasonably believe that Williamson was engaged in or about to engage in a felony. There was no tip that Williamson had purchased anything other than Sudafed or that he was manufacturing a controlled substance or engaging in any other felony. Law enforcement had no reasonable basis to believe that Williamson was engaged in *358 the illegal activity with which he was ultimately charged. The majority appears to interpret the applicable statute as stating that if a person purchases more than a box of Sudafed, he must be using it for some illegal purpose. The language of the statute clearly requires intent or knowledge that the precursor will be used to illegally manufacture a controlled substance. There must be some additional evidence other than just the purchase of one precursor to establish a reasonable basis for an investigatory stop.
¶ 24. The officer testified that there was also a second call reporting that the men attempted to buy Sudafed at the Family Dollar Store. The majority at least twice refers to this second call. However, the dispatcher's log did not reflect any such second call and, as stated previously, the officer did not know who called. The trial court order states:
A copy of the Dispatchers log was entered into evidence as Exhibit 1 to the hearing. The log showed a call from Campbell's Big Star, but no call from Family Dollar.

Order of June 3, 2003, at 4 (emphasis added). There was also no receipt for a Sudafed purchase from Family Dollar, nor was there any receipt for the fuel additive.
¶ 25. The majority relies on the lower court case of Shannon v. State, 739 So.2d 468 (Miss.Ct.App.1999), but does not even attempt a thorough analysis under the controlling case of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), or its progeny. While Shannon does accurately set out some of the standards regarding police action, the case is distinguishable. Shannon's parked car was approached by a law enforcement officer as he was loitering after midnight in a parking lot that the police had been asked to patrol. Shannon was walking toward the car when the officer asked what he and a passenger were doing there. The officer then patted Shannon down for weapons, but since he was unable to feel under Shannon's coat, he asked Shannon to empty his pockets, which contained paraphernalia and crack cocaine. That is an entirely different factual scenario than the case sub judice.
¶ 26. The majority cites Florida v. J.L., 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (quoting Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)) for the proposition that there are situations in which an anonymous tip provides reasonable suspicion to make an investigatory stop. The majority fails to mention that the United States Supreme Court held in Florida v. J.L. that an anonymous tip that a young, black male standing at a particular bus stop and wearing a specific plaid shirt was unlawfully carrying a gun lacked sufficient indicia of reliability to establish reasonable suspicion for a Terry investigatory stop. In fact, the quote cited by the majority is immediately preceded in the opinion by the statement that "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." Id. at 271, 120 S.Ct. 1375 (quoting Alabama v. White, 496 U.S. at 329, 110 S.Ct. 2412). The Court there further set out that verification of the information contained in a tip does not provide a reasonable basis for suspecting unlawful conduct.
An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.
*359 Id. at 272, 120 S.Ct. 1375. The Court was referring to an anonymous tip alleging illegal activity. In the case sub judice, we don't even reach that. We have an anonymous tip alleging legal activity. A description and location of the defendant does not establish that the tip is "reliable in its assertion of illegality." Likewise, the indicia of reliability must be established by the officer prior to the stop and is not proven by the confirmation of the allegation.
That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.
Florida v. J.L., 529 U.S. at 271, 120 S.Ct. 1375.
¶ 27. The majority cites Floyd v. City of Crystal Springs, 749 So.2d 110, 118 (Miss.1999) regarding reliability of the informant and the totality of circumstances. However, Floyd involved a known, named source, who had previously provided credible information, approaching a police officer in person and conveying information regarding specific illegal activity. That Court also found:
[T]he information given by the informant to Officer Leflore was neither vague as to the type of criminal activity nor imprecise as to the kind of crime being committed. The informant also described the suspect's location with some particularity. Furthermore, the name of the informant in the case at hand was known by Officer Leflore, and Leflore had received complaints from the informant in the past.
Id. at 119. The Court also reiterated that "a tip by an unnamed informant of undisclosed reliability standing alone will rarely establish the requisite level of suspicion" for an investigative stop, but that a known tipster confronting an officer in person should be given more weight. Id. at 118.
¶ 28. The anonymous informant in the case sub judice was not a named source who had provided information in the past, the activity complained of was not criminal in nature and the tip was not precise as to the crime being committed.
¶ 29. The majority also cites Floyd v. State, 500 So.2d 989 (Miss.1986). Although the applicable standard regarding investigatory stops is recited in Floyd, the issue raised there was actually whether the Highway Patrol had probable cause to arrest Floyd. However, the majority does quote language from Floyd, quoting McCray v. State, 486 So.2d 1247 (Miss.1986), which raises another determinative issue.
¶ 30. In McCray, this Court held that a search of the defendant's luggage at the airport did not violate the Fourth Amendment, but that the evidence was insufficient to support a conspiracy charge. The Court set out the standard that an investigative stop of a suspect may be made where officials have "a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony.... or some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." Id. at 1249, 1250. The Court found the stop proper after an analysis of the relevant facts.
In this case, the officers in observing certain characteristics of the often used drug courier profile clearly had probable cause to stop and question the appellant. The appellant had (1) made a trip to a "source city", (2) purchased a one-way ticket, (3) made a long distance trip with a short turn around, (4) checked a suitcase that was not completely full, (5) was *360 accompanied by persons who used fictitious names, even though he did not do so himself, and (6) claimed luggage which a drug-detecting dog had indicated contained narcotics.
Id. at 1250.
¶ 31. The United States Supreme Court made a similar analysis in United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621:
The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions  inferences and deductions that might well elude an untrained person.... Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
Id. at 418, 101 S.Ct. 690.
¶ 32. This Court has previously acknowledged that such a stop is problematic.[1] However, in researching other jurisdictions, I have not found any that has upheld a stop based on such limited facts. In State v. Bulington, 802 N.E.2d 435 (Ind.2004), the Indiana Supreme Court held that a tip from a store employee that the defendants had purchased antihistamines was not sufficient to create a reasonable suspicion necessary to justify stopping the defendants' vehicle. In Bulington, store employees observed two defendants enter the store, select three boxes of antihistamines each and check out separately, then walk out to a truck where they were seen removing the tablets from the boxes and putting them in bags. An identified store employee called the police and conveyed that information as well as the location and movement of the men, and the color and type of vehicle they were driving. Officers stopped the vehicle as it was pulling out of the store parking lot, got consent to search and found numerous items that could be used in the manufacture of methamphetamine. The court found that the content of the tip that the men had purchased one precursor was not enough to provide the officer with reasonable suspicion to make a stop.[2]
¶ 33. The cases where courts have found reasonable suspicion involve substantially more evidence than that presented here. The Fifth Circuit in United States v. Martinez, 808 F.2d 1050 (5th Cir.1987), found a stop proper where a Drug Enforcement Agency officer entered a chemical company as the defendant was completing a transaction and saw a receipt for all of the chemicals needed to manufacture crystal methamphetamine. The officer followed the defendant, who began driving erratically, and eventually stopped him.
¶ 34. In United States v. Ameling, 328 F.3d 443 (8th Cir.2003), the court found an *361 investigatory stop proper where a named Target store security officer, who had received law enforcement training, viewed two defendants purchasing pseudoephedrine products and acting suspiciously via a surveillance monitor, and then reported the activity to police, who verified that the defendants then proceeded to another store and purchased additional precursors, before making the stop.
¶ 35. The United States District Court in United States v. Araque, 255 F.Supp.2d 1010 (D.Neb.2003) found a stop proper where officers received a tip from store employees that the defendant and another person had attempted to purchase two gallons of iodine, but left without completing the purchase when asked for identification. After receiving the tip, officers conducted surveillance on the car and observed the occupants purchasing pseudoephedrine from two drug stores before stopping the car.
¶ 36. In the case sub judice, there was no surveillance by law enforcement or verification that any criminal activity was afoot. The "profiling" was not done by a trained law enforcement officer. An anonymous, untrained source drew the inferences and made the deductions. The anonymous tip was purported to be from Campbell's Big Star. The tip would presumably have been made from a store clerk, who is not likely to have any law enforcement training whatsoever, much less the ability to identify an individual as a manufacturer of crystal methamphetamine from a single purchase of Sudafed. However, as previously discussed, the identity of the tipster was unknown. Sudafed is sold over the counter at pharmacies, discount stores, convenience stores, grocery stores, gas stations and other places. Those businesses also generally allow patrons use of their telephones within reason. Even if the call was traced back to a particular business, there is no way to know the identity of the person making the call. Without identification and some indicia of reliability of any tip, a stop based on such information is wholly improper and the resulting fruit illegal.
¶ 37. The majority opinion sets the stage for an investigatory stop any time law enforcement receives an anonymous tip that an individual has made a lawful purchase of any precursor chemical regardless of whether such is intended for a sinister purpose. The majority also sets the stage for an investigatory stop based on false or malicious tips from unreliable, anonymous sources. Those precursor chemicals are found in many household items, including acetone fingernail polish remover, lithium batteries, iodine, gas treatment, table salt, matchbooks, isopropyl alcohol, etc. Such action is greatly outside the scope of established precedent and a violation of the Fourth Amendment.
¶ 38. Making a lawful purchase of over-the-counter medication does not create a "reasonable suspicion, grounded in specific and articulable facts, that the suspect was involved in or is wanted in connection with a felony." There are no articulable facts set out that Williamson had or was about to engage in illegal activity. The anonymous tip did not carry sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop. Because I would find that any evidence seized as a result of the illegal stop should be suppressed, I must respectfully dissent.
NOTES
[1] See Schattenburg v. State, 2003-M-00443, where a panel of this Court entered an order that denied the petition for interlocutory appeal, but suggested that the trial court at least revisit the motion to suppress evidence.
[2] Interestingly, the court also notes that "[r]etail stores often offer `buy one-get one free' coupons with a one-per customer limitation. A customer can circumvent that limitation and double his or her purchasing power by shopping with a companion, each of whom uses the `buy one-get one free coupon,' checks out separately, and then meets outside to settle up." Id. at n. 3.