# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-KA-00505-SCT

*SENQUE WRIGHT a/k/a SENQUE SANTANZE*
*WRIGHT a/k/a SENQUE SANTANZ WRIGHT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/31/2020 |
| TRIAL JUDGE: | HON. CLAIBORNE McDONALD |
| TRIAL COURT ATTORNEYS: | JEREMY LAWRENCE NECAISE |
| | LINDSAY GREEN WATTS |
| | BEAU A. STEWART |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: HUNTER N. AIKENS |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA BYRD |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/21/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     A Pearl River County jury convicted Senque Wright of possessing a dirk knife as a

convicted felon on January 23, 2020.[1]  The trial court adjudged Wright a habitual offender

under Mississippi Code Section 99-19-81 (Rev. 2020) and sentenced him to serve ten years

---

[1]A photograph of the knife in question is attached.

in the custody of the Mississippi Department of Corrections.  The trial court denied Wright's motion for a judgment notwithstanding the verdict or a new trial.  Wright appealed.

**FACTS AND PROCEDURAL HISTORY**

¶2.    Around 6:00 p.m. on January 6, 2019, Officer John Bolton of the Picayune Police Department was called by an informant who told him that "[t]here was a black male subject in front of Apartment No. 1 at Hunan Apartments . . . [and] that the subject was in possession of a gun."  Bolton was also informed that the individual had trespassed at the location previously.  Bolton contacted Picayune Police Department dispatch, advised them of the situation, and asked them to send an officer to the scene.

¶3.    Lieutenant Aaron Grob responded to the area immediately and spoke with several individuals who stated that they had seen the man, later identified as Wright.  The individuals pointed out the man to Grob.  Grob approached Wright and directed him to turn around and place his hands on the wall.  During the patdown that followed, Grob was pierced by the blade of a knife in Wright's pocket.  Grob testified that Wright asked Grob if he had cut himself on the knife.  Grob handcuffed Wright and secured the knife.  Grob also retrieved a plastic bag containing a crystalized substance he believed to be methamphetamine.  Grob then arrested Wright for possessing a controlled substance.  Wright was charged with possessing a misdemeanor amount of methamphetamine and felon in possession of a prohibited weapon, a dirk knife.

¶4.    At trial, Grob testified that he described the weapon as a dirk knife because it had a "sharpened edge on one side, was tapered to a point, and would primarily be used for

stabbing." After considering the evidence, the jury found that Wright was guilty of felon in possession of a dirk knife. Wright now appeals.

## STANDARD OF REVIEW

¶5.    "Whether probable cause or reasonable suspicion exists is subject to a *de novo* review. But the Court limits the *de novo* review of the trial court's determination to 'historical facts reviewed under the substantial evidence and clearly erroneous standards.'" *Martin v. State*, 240 So. 3d 1047, 1050 (¶ 7) (Miss. 2017) (internal quotation marks omitted) (quoting *Eaddy v. State*, 63 So. 3d 1209, 1212 (¶ 11) (Miss. 2011)). "As with all evidentiary issues, our standard for reviewing a trial judge's admission or exclusion of evidence is one of abuse of discretion." *Taggart v. State*, 957 So. 2d 981, 989 (¶ 17) (Miss. 2007) (citing *Shaw v. State*, 915 So. 2d 442, 445 (¶ 8) (Miss. 2005)). "When reviewing a challenge to the sufficiency of the evidence, this Court considers all of the evidence in the light most consistent with the verdict, giving the State the benefit of all inferences favorable to the verdict." *Meek v. State*, 806 So. 2d 236, 239 (¶ 9) (Miss. 2001) (citing *Jones v. State*, 669 So. 2d 1383, 1388 (Miss. 1995)). "When the evidence before the jury is such that reasonable jurors could have found the defendant guilty, the verdict is beyond our authority to disturb." *Id.* (citing *Taylor v. State*, 672 So. 2d 1246, 1255 (Miss. 1996)).

## DISCUSSION

¶6.    Wright argues that the trial court erred by denying Wright's motion to suppress evidence. Wright argues that Grob lacked reasonable suspicion to support his detention and patdown of Wright. Wright further argues that the evidence was insufficient to support the

3

verdict because the State failed to meet its burden to prove beyond a reasonable doubt that Wright's knife was a prohibited dirk knife.

**I.    The trial court did not err by denying Wright's motion to suppress.**

¶7.    Wright argues that the search of his person was illegal and that the evidence obtained from the search should have been excluded. He argues that "[a] vague report of a black man with a firearm in front of Apartment No. 1" was an insufficient basis to conduct an investigatory search.

¶8.    The Court has held that "a person may be detained short of a full arrest for investigatory purposes." *Dies v. State*, 926 So. 2d 910, 918 (¶ 22) (Miss. 2006) (citing *Jones v. State*, 841 So. 2d 115, 125 (¶ 18) (Miss. 2003)). An investigative stop is permitted as long as an officer "[has] some objective manifestation that the person stopped is, or is about to be engaged in criminal activity." *Id.* (internal quotation mark omitted) (quoting *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 114 (¶ 16) (Miss. 1999)). The Court must consider, under the totality of the circumstances, "whether the officer had a 'particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *Floyd*, 749 So. 2d at 114 (¶ 16)). "Grounds for reasonable suspicion to make an investigatory stop generally come from two sources: either the officers' 'personal observation' or an informant's tip." *Eaddy*, 63 So. 3d at 1213 (¶ 15) (quoting *Williamson v. State*, 876 So. 2d 353, 355 (¶ 11) (Miss. 2004)). Finally, "an informant's tip may provide reasonable suspicion if accompanied by some indication of reliability; for example, reliability

4

may be shown from the officer's independent investigation of the informant's information."
*Id.* (citing *Florida v. J.L.*, 529 U.S. 266, 270 (2000)).

¶9.    The confidential informant called Bolton and alerted him of a man with a gun at Hunan Apartments.  The informant also notified Bolton that Wright had trespassed at the apartments before.  Bolton then called dispatch to advise them to send an officer to the location and check on the information provided by the confidential informant.  After dispatch was given the information, Grob was sent to Hunan Apartments.  Once there, Grob approached a group of people sitting in the common area of the apartments and asked them if they had seen anyone with a gun.  The witnesses corroborated the informant's information, then directed Grob to Wright.  Because Bolton was provided with information that Wright had trespassed at the apartments before, Bolton had reasonable suspicion that Wright may have been engaged in criminal activity.  Bolton's reasonable suspicion was then transferred to Grob.  "This Court has held that reasonable suspicion and probable cause can be transferred from officer to officer and police department to police department." *Dies v. State*, 926 So. 2d at 920 (¶ 29) (citing *Jones v. State*, 841 So. 2d at 126 (¶ 24)).  Grob had reasonable suspicion necessary to conduct an investigatory search.  Accordingly, we find that the evidence was admissible and that the trial judge did not err by denying the motion to suppress.

**II.    The State presented sufficient evidence to sustain the jury's verdict.**

¶10.    Wright argues that the evidence was insufficient to prove beyond a reasonable doubt that the knife Wright possessed was a dirk knife prohibited by Mississippi Code Section 97-

5

37-5. Miss. Code Ann. § 97-37-5(1) (Rev. 2020). "When reviewing a challenge to the sufficiency of the evidence, this Court considers all of the evidence in the light most consistent with the verdict, giving the State the benefit of all inferences favorable to the verdict." *Meek*, 806 So. 2d at 239 (¶ 9) (citing *Jones*, 669 So. 2d at 1388). "When the evidence before the jury is such that reasonable jurors could have found the defendant guilty, the verdict is beyond our authority to disturb." *Id.* (citing *Taylor*, 672 So. 2d at 1255).

¶11. Mississippi Code Section 97-37-5 prohibits convicted felons from possessing four types of knives: "[a]ny bowie knife, dirk knife, butcher knife, [or] switchblade knife." Miss. Code Ann. § 97-37-5(1). The Court of Appeals stated in *Summerall v. State*: "to qualify as a dirk knife, [a] weapon must: (1) have a blade with at least one sharpened edge which tapers to a point and (2) be designed primarily for use as a stabbing weapon." *Summerall v. State*, 41 So. 3d 729, 737 (¶ 32) (Miss. Ct. App. 2010). We agree.

¶12. At trial, the jury saw the knife that was found in Wright's possession. The knife did in fact have one sharpened edge and was tapered to a point. Viewing the evidence in the light most consistent with the verdict, a reasonable juror could have found that the knife was a dirk knife under Section 97-37-5(1). Accordingly, we find that the evidence was sufficient to support the verdict.

## CONCLUSION

¶13. Because Grob had reasonable suspicion to conduct an investigative stop, we find that the trial court did not err by denying Wright's motion to suppress evidence. Further, because the knife found in Wright's possession was shown to the jury, sufficient evidence was

presented for a reasonable juror to conclude that the knife was a dirk knife primarily used for stabbing. We affirm the trial court's decision.

¶14. **AFFIRMED.**

**RANDOLPH, C.J., MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J., AND ISHEE, J.**



7

**KING, PRESIDING JUSTICE, DISSENTING:**

¶15. Law enforcement lacked reasonable suspicion to stop Senque Wright; therefore, evidence from the investigatory stop should be suppressed. Additionally, the State failed to present sufficient evidence that the knife in Wright's possession was a statutorily prohibited dirk knife. This Court should reverse and render Wright's conviction for possessing a dirk knife as a convicted felon.

1. *Motion to Suppress Evidence*

¶16. "Grounds for reasonable suspicion to make an investigatory stop generally come from two sources: either the officers' 'personal observation' or an informant's tip." *Eaddy v. State*, 63 So. 3d 1209, 1213 (Miss. 2011) (quoting *Williamson v. State*, 876 So. 2d 353, 355 (Miss. 2004)). As the majority notes, "an informant's tip may provide reasonable suspicion if accompanied by some indication of reliability[.]" *Eaddy*, 63 So. 3d at 1213. However, "[a]n accurate description of a subject's readily observable location and appearance . . . does not show that the tipster has knowledge of concealed criminal activity." *Florida v. J.L.*, 529 U.S. 266, 272, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000). Indeed, a black male simply in possession of a gun does not describe criminal activity. Possession of a gun is not only legal in Mississippi, it is a constitutional right. Miss. Const. art. 3, § 12. Instead, "[t]he reasonable suspicion here at issue requires that a tip be reliable in its assertion of *illegality*, not just in its tendency to identify a determinate person." *J.L.*, 529 U.S. at 272 (emphasis added).

¶17. The majority asserts that the informant's allegation that Wright had previously trespassed at the apartments provided reasonable suspicion that Wright may have been

8

engaged in criminal activity. Maj. Op. ¶ 9. Yet, absolutely nothing indicated that the tip regarding alleged past trespassing is reliable. Nothing corroborated this tip. When Grob arrived at the apartments, he asked, "See anybody over here with a gun?" But, again, verification that a person had a gun alleged no criminal activity. And the tip regarding past trespass was completely uncorroborated; thus, the tip lacked sufficient reliability to show that reasonable suspicion existed.

¶18. Further, the tip did not allege that Wright was then trespassing, thus it gave no indication that criminal activity was occurring *at that time*. The tip indicated that, in the past, the owner of an apartment complex had determined that Wright was a trespasser. But the property consisted of a multi-unit apartment complex. So the property owner was presumably not the only party with certain rights to the property. Tenants have certain property rights, which could conceivably include being allowed to invite guests to the property. An uncorroborated allegation that, in the past, one party of many who may invite guests to a property found Wright to be a trespasser is a tenuous basis for reasonable suspicion.

¶19. Indeed, the tip regarding trespass was unlikely to be "corroborated" in any manner by Grob, because Grob had no knowledge of the tip regarding Wright's alleged prior trespass in the first place. Consequently, he had no reasonable suspicion for an investigatory stop of Wright. The majority's reliance on caselaw holding that reasonable suspicion may be transferred from officer to officer is misplaced. In ***Dies v. State***, two narcotics agents smelled burnt marijuana in a car. ***Dies v. State***, 926 So. 2d 910, 913 (Miss. 2006). They

9

informed a local police officer that they smelled burnt marijuana, gave him a full description of the car, and asked him to make a traffic stop of the vehicle. *Id.* "When the agents described the information they had obtained to [the officer] and requested his help with a traffic stop, their reasonable suspicion transferred to him. Therefore, when [the officer] acted, he did so with the reasonable suspicion that the agents had given to him." *Id.* at 920. Law enforcement may reasonably rely on information given to them by other law enforcement entities. *Jones v. State*, 841 So. 2d 115, 126-27 (Miss. 2003). "There is no reason why *information* received from another law enforcement official, who has a sworn duty to uphold the law, should be any less reliable than information received from an informant [whose] credibility, in many situations, is uncertain." *Id.* at 127 (emphasis added).

¶20. Yet, in this case, Grob never received Bolton's information from the informant that alleged a prior trespass. The only potential illegality alleged by the informant's tip was entirely missing from Grob's knowledge. Thus, he had no reasonable suspicion to stop Wright. *Jones* and *Dies* stand for the proposition that information that is sufficiently reliable for one law enforcement party to possess reasonable suspicion for a stop may be transferred to another law enforcement party without the necessity of further indicia of reliability. In other words, "[t]he officer's personal observation includes *information* from other law-enforcement personnel." *Eaddy*, 63 So. 3d at 1213 (emphasis added) (citing *Dies*, 926 So. 2d at 920). They do not stand for the proposition that, when the information is not actually transferred, that information somehow manifests into the other officer's knowledge. And even if the information had been relayed from Bolton to Grob, the simple act of Bolton

10

communicating an informant's tip to Grob does not render the tip reliable. An informant's tip does not gain reliability simply by passing it from officer to officer. Because Grob had no knowledge of the allegations of previous trespass, he had no reasonable suspicion that a crime was being committed.

¶21. Because no reasonable suspicion existed for the investigatory stop, the fruits of that stop, namely the knife, should have been suppressed. Without the evidence of a weapon, the State cannot prove that Wright was a felon in possession of a prohibited weapon.

### 2. *Insufficient Evidence*

¶22. Additionally, the State failed to prove beyond a reasonable doubt that the knife in Wright's possession was a prohibited dirk knife. In a well-reasoned opinion, the Court of Appeals analyzed the meaning of "dirk knife" under Mississippi Code Section 97-37-5(1) (Supp. 2009). *Summerall v. State*, 41 So. 3d 729 (Miss. Ct. App. 2010). The majority cites this case with approval, but it does so without providing context. Maj. Op. ¶ 11.

¶23. The Court of Appeals first noted that courts must apply the common and ordinary meaning of the term "dirk knife." *Id.* at 734 (citing Miss. Code Ann. § 1-3-65 (Rev. 2005)). It reviewed dictionary definitions and caselaw that generally define a dirk knife as a type of dagger. *Id.* It then outlined the "traditional test" and the "modern test" for determining whether a knife is a dirk knife. *Id.* at 734-37.

¶24. Under the traditional test, the Court of Appeals found that the dagger-like qualities are emphasized. *Id.* at 734-36 (citing *McMillan v Commonwealth*, 686 S.E.2d 525 (Va. Ct. App. 2009)). "The *McMillan* court gave particular emphasis to the fact that a dirk is a

stabbing weapon and may be defined as a short sword." ***Summerall***, 41 So. 3d at 735. Among the qualities of a dirk knife are a "long blade," along with a "protective guard where the blade meets the handle" or a "hilt usually terminating in a pommel" or a "tang." ***Id.*** (internal quotation mark omitted) (quoting ***McMillan***, 686 S.E.2d at 527). Applying this standard to Summerall's knife, the Court of Appeals found that the four-inch blade was not long, it lacked a hilt terminating in a pummel, and it had "one sharpened edge and one blunt edge, . . . which the [***McMillan***] court found insufficient to show it possessed dirk-like qualities." ***Id.*** at 736.

¶25. In discussing the "modern test," the Court of Appeals opined that the traditional definition of a dirk knife being solely a dagger is no longer the generally accepted meaning of a dirk knife. ***Id.*** (citing ***In re Jesse "QQ"***, 243 A.D.2d 788, 789 (N.Y. App. Div. 1997)). "The ***Jesse*** court held the 'modern test for a dirk is whether the instrument has a blade with a [sic] least one sharpened edge which tapers to a point and is primarily intended for use as a stabbing weapon.'" ***Id.*** (quoting ***Jesse***, 243 A.D.2d at 789). The knife in ***Jesse*** was a palm knife that "'rests against the palm of the hand with the blade protruding from between the middle fingers, a design which actually increases its effectiveness as a stabbing weapon.'" ***Id.*** (quoting ***Jesse***, 243 A.D.2d at 789-90). "In ***Jesse***, the New York court found the small palm knife had 'no utilitarian purpose' because 'its physical characteristics [made] it suitable primarily, if not exclusively, for stabbing.'" ***Id.*** (quoting ***Jesse***, 243 A.D.2d at 790). Applying the modern test to Summerall's knife, the Court of Appeals noted that the knife could be used for common utilitarian purposes like hunting and fishing. ***Id.*** at 736-37. It

12

found no indication from the record that the knife was suitable primarily or exclusively for stabbing, even though the knife *could* be used for stabbing. *Id.* It maintained that almost any knife "could be a dangerous instrument in the hands of a person with criminal intent, [but] the issue before us is what the statute proscribes as unlawful, not simply what might be dangerous." *Id.* at 737. The Court of Appeals concluded that to qualify as a dirk knife, a knife "must: (1) have a blade with at least one sharpened edge which tapers to a point and (2) be designed primarily for use as a stabbing weapon." *Id.*

¶26.    Many knives have a blade with at least one sharpened edge that tapers to a point. Pocket knives, steak knives, and many other common kitchen, hunting, or fishing knives share this quality. Thus, the more important question in determining whether a knife is a prohibited dirk knife is whether it is designed primarily as a stabbing weapon. The traditional definition of a dirk knife is instructive, although not dispositive, in making this determination. The record does not indicate the length of the knife at issue, although photos indicate that the blade is not particularly long. The knife is thin. Grob testified that the knife possessed markings, but that he was unable to ascertain whether these markings were manufacturer markings or model numbers. Grob further testified that he could not ascertain what the original intent was for use of the knife when it was manufactured.

13





The knife at issue strongly resembles a fish fillet knife, which constitutes a lawful utilitarian use for the knife. *See*

https://1source.basspro.com/news-tips/fishing-tackle/5166/fillet-knife-buyers-guide (last visited Sept. 21, 2021); https://www.basspro.com/shop/en/bubba-ultra-flex-fillet-knife (last visited Sept. 21, 2021). The knife completely lacks any traditional dagger-like characteristics that might indicate a primary design for stabbing. The blade does not appear long, and it has no hilt or pommel. Nothing else in the design of the handle indicates that the knife was designed to stab. Furthermore, common sense dictates that a knife as thin as the one in Wright's possession is unlikely to have been designed primarily as a stabbing device. *See* https://knife-depot.com/collections/self-defense-knives (last visited Sept. 21, 2021). The knife appears to be simply a common kitchen knife.

¶27. Grob also testified that he determined that the knife was a dirk knife because he believed it was primarily *used* as a stabbing weapon. He repeatedly emphasized that this must be true because he was injured by the knife when he reached into Wright's pocket, and because Wright also claimed to have injured himself with the knife in the past. Yet, the subjective intent of the knife's possessor is irrelevant to the determination of whether a knife is a prohibited knife. ***Summerall***, 41 So. 3d at 737. Section 97-37-5 "employs a strict-liability standard prohibiting the mere possession of a dirk knife by a felon—regardless of the intended use." ***Id.*** Under the statute and caselaw, the design of the knife is what is relevant, not its possessor's intended use. A dagger-like dirk knife that the possessor intends to use solely as wall decoration is nonetheless a prohibited weapon under the statute. A

15

Wüsthof steak knife that the possessor intends to use solely for stabbing is nonetheless not a prohibited weapon under the statute.

¶28. Nothing in the record indicates that the knife in Wright's possession was primarily designed for stabbing. Nor does the knife at issue meet any physical criteria that would tend to indicate it was designed as a stabbing weapon. This knife is not a prohibited dirk knife under Section 97-37-5(1), and the State therefore did not provide sufficient evidence that Wright possessed a dirk knife.

## CONCLUSION

¶29. Law enforcement lacked any reasonable suspicion of criminal activity in order to justify Grob's investigatory stop of Wright. The evidence gathered from the stop should therefore have been suppressed. *Eaddy*, 63 So. 3d at 1216. Without evidence of the knife, insufficient evidence exists to sustain Wright's conviction of possessing a dirk knife as a convicted felon. Additionally, even if the trial court did not err by failing to grant Wright's motion to suppress, the State failed to prove that the knife at issue is a dirk knife, as no evidence exists that the knife was designed primarily as a stabbing instrument. Sufficient evidence does not exist to sustain Wright's conviction of possessing a dirk knife as a convicted felon. This Court should consequently reverse and render Wright's conviction.

**KITCHENS, P.J., AND ISHEE, J., JOIN THIS OPINION.**

16