AUGUSTINE *v.* STATE.

(In Banc. Dec. 9, 1946.)

[28 So. (2d) 243. No. 36209.]

**John T. Armstrong** and **Lena C. Zama,** both of Hazle-hurst, for appellant.

**Greek L. Rice,** Attorney General, by **Geo. H. Ethridge,** Assistant Attorney General, for appellee.

Argued orally by **John T. Armstrong**, for appellant, and by **Geo. H. Ethridge**, for appellee.

**Roberds, J.,** delivered the opinion of the court.

Appellant and Virgil Smith and Howard White were jointly indicted under Section 2367, Code 1942, for robbery of C. C. Coen by the exhibition of a deadly weapon. Appellant was granted a severance; was convicted as charged and the verdict of the jury sentenced him to death.

On this appeal, he assigns and argues many alleged errors. We will consider and decide three of them which

we think call for a reversal and remand of the case, and will then pass upon such others as will necessarily, or likely, arise in a new trial.

The diligent district attorney, in his closing argument to the jury, said: "That he had seen or known of one man who had been tried for five different murders because the jurors followed the course of least resistance and turned him loose on the others; that he had seen people go to the penitentiary for five or six year terms, then come out to commit other crimes, and that unless a stern verdict was rendered in this case it would not stop crime, and that people who were sent to the penitentiary were given a pardon or suspension."

Counsel for the defendant immediately objected to this argument and asked for a mistrial because thereof. The trial judge said: "Gentlemen, you have nothing to do with pardons or suspensions," and overruled the motion for a mistrial.

Cigarettes were a part of the property taken in the robbery. These were found by the officers several days later in a locked box in the home of the mother of Smith, a confederate. With them was found a 38 Iver Johnson Pistol. Smith had procured that pistol in New Orleans after the robbery. It was not at the scene of the robbery and was not taken as a part of the property. Coen did not own it. In fact, the proof shows without dispute that the only pistol used in the robbery was a cap, or toy pistol. Mr. Coen testified he saw no pistol of any kind. The Iver Johnson Pistol was first admitted in evidence. Later, it was excluded. The latter ruling was correct. However, in his closing argument the district attorney said "They come in here and ask for you not to send this defendant to the chair, because a cap pistol was used, but, gentlemen of the jury, we find the cigarettes and on top of those cigarettes what do we find? This pistol." And, he then reached to the table and asked where the pistol was, meaning the pistol which had been excluded. Counsel for defendant objected and asked for a mistrial. The court

instructed the jury to disregard the statement that this was the pistol ". . . used on the night of the robbery; that there was no testimony identifying this as the same pistol," and then overruled the motion for a mistrial.

The third question arose under these conditions: The crime occurred Monday night about eight o'clock. The following Friday, appellant was arrested in New Orleans. The officer in charge of appellant testified to a confession made to him as they returned to Mississippi. In the course of his testimony he said appellant told him that two or three days before the robbery appellant and his confederates hired a taxi in New Orleans ". . . to take them out to some street . . . I forgot the name of the street . . . and they told him they wanted to stop, and when he stopped they told him it was a stick-up." Appellant objected to this line of testimony, and the objection was overruled before the witness got to the quoted statement. Immediately after the quoted statement was made, appellant objected and moved for a mistrial, especially because of the use of the word "stick-up." The objection was overruled, the trial judge admonishing the witness to "Confine your testimony to this offense."

The facts in this case are somewhat unusual. When Augustine was arraigned, he had no counsel and he undertook to plead guilty. The trial judge refused to accept that plea, whereupon a plea of not guilty was entered. On the trial of the case, the State introduced a number of witnesses to whom appellant had voluntarily confessed that he participated in the robbery. He himself took the stand as a witness on the trial and frankly stated his part in the robbery. The only real question before the jury was the extent of the punishment, said section providing that one convicted thereunder "shall be punished by death if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at death, the court shall fix the penalty at imprisonment in the penitentiary for any term not less than three years."

We will deal with the remarks about suspensions and pardons. In Magee v. State, 198 Miss. 642, 22 So. (2d) 245, 248, this Court said: "The question is not merely whether the jury may have found the defendant guilty of murder in the instant case . . . but also whether such proof may have influenced the jury to fix the death penalty as his punishment."

In Abney v. State, 123 Miss. 546, 86 So. 341, the district attorney, in urging the jury to return a verdict of murder instead of manslaughter, referring to the lighter punishment for manslaughter, said: "The maximum penalty is 20 years in the state penitentiary and the minimum penalty is absolutely in the discretion of the court." This Court held that these remarks constituted reversible error.

In Hartfield v. State, 186 Miss. 75, 189 So. 530, 532, the district attorney urged the jury to return a verdict of murder in such form as that it would necessarily carry the death penalty instead of a verdict for manslaughter or life sentence in the penitentiary, "Because he is already there under a life sentence, and anything less than the death penalty would not be any punishment in this case." The Court held this argument to be in error.

In Minor v. State, 101 Miss. 107, 57 So. 548, the Court held that it was reversible error for the prosecuting attorney, on a charge of murder, to say to the jury "If you bring in a verdict of manslaughter, the court does not have to sentence her to the penitentiary, but can fine her or send her to the county farm."

Likewise, in Windham v. State, 91 Miss. 845, 45 So. 861, the Court held it was error for the prosecuting attorney, where the defendant was being tried for murder, to urge in his argument to the jury that the judge could, in his discretion, punish the defendant, if convicted of manslaughter, either by fine or imprisonment in the county jail, or for a term of years in the penitentiary.

In State v. Johnson, 151 La. 625, 92 So. 139, 142, the prosecuting attorney in his closing argument said: "That

the evidence in this case demands the death penalty, and while the law authorizes the jury to return a verdict of guilty as charged, without capital punishment, which would call for the sentence of life imprisonment in the penitentiary, this law is a farce, or rather a fiction of the law. It does not mean what it says. It only means that the defendant would be sentenced to serve his natural lifetime in the penitentiary, and history shows that, after a short period of time, say 5, 10 or 15 years, he would be turned loose again on society.'' The Louisiana Court, in responding to that argument, used this language: ''. . . The district attorney should refrain from bringing to bear upon the jury his personal and official opinion that, by reason of an unwise (in his opinion) parole system, there was no life imprisonment in this state, and which argument could have no other purpose than to influence the jury in favor of an unqualified verdict. Simply because the law-making power of the state has seen proper, in the exercise of its wisdom, to create a pardoning board, and to establish a system of parole, and just because under that system, a life termer is occasionally pardoned or paroled, furnishes no sufficient reason in law for an appeal to the jury to disregard the statute which vests in them the discretionary power to qualify the verdict, and to treat that law as a farce and utterly without any meaning whatever.''

In the case of State v. Henry, 196 La. 217, 198 So. 910, 923, the prosecuting attorney, after reciting to the jury his personal knowledge of cases where pardons had been granted, used this language: ''. . . As I was saying when interrupted you all know as well as I do that life imprisonment does not mean that. I am giving you an example of it, and you all no doubt know of many others. Through the functioning of our Parole Board and Boards of Pardon, and politicians, principally, particularly in Louisiana. I am not criticizing those laws, they are good in some cases, but gentlemen of the jury these Boards do not have the opportunity to pass on the facts of the case

like you do. So we can eliminate the possibility of later injustice by following what the law clearly tells you you have a right to do, and that is to find this defendant guilty as charged.'' The Court held that the argument was improper.

The only reply made by the State is that the fixing of the punishment was one of the questions to be decided by the jury, and that the argument of the district attorney was therefore pertinent and applicable. The reply to that suggestion is that in all indictments for murder, the punishment which is administered by the court always depends upon the nature of the verdict of the jury in Mississippi, and the jurors are usually instructed as to the various forms in which they may report their verdict, and the consequent duty of the trial judge in fixing the punishment depends upon the verdict which is rendered.

We appreciate the fact that prosecuting attorneys should not be handcuffed in their arguments, and should be permitted to draw their own conclusions from the facts and evidence, and express these to the jury, but in this case there was no proof of the facts recited by the prosecuting attorney, either as to other instances of prosecutions for murder mentioned by him or of pardons and suspensions referred to in his statement.

It was clearly error for the district attorney to refer to the 38 Iver Johnson Pistol in his argument to the jury. That pistol was not at the scene of the crime, nor was it taken from Mr. Coen. It had nothing to do with the case. As stated, the only pistol there was a cap, or toy, pistol, and Mr. Coen testified he saw no pistol; therefore, so far as putting Mr. Coen in fear was concerned, no pistol whatever was used. Three persons participated in the robbery —appellant, Virgil Smith and Howard White. It appears that the weapon which was really used in the hold-up was what is called a dirk knife. It is common knowledge that the weapon usually used in committing this crime is a pistol or some firearm. The title to the section is ''Robbery with firearms.'' Such a weapon, both in the likeli-

hood and manner of its use, and the injury resulting from such use, is much greater than that of a knife. A pistol can be used effectively at much greater distance and much more quickly than a knife and the victim has less chance to avoid serious injury from being shot than from being cut.

As to the third question, the common understanding of "stick-up" is a hold-up, usually by use of a pistol. The jury must have understood from the use of the word "stick-up" that appellant, a few days prior to the robbery here, was guilty of another crime of robbery by hold-up of the victim. It was incompetent to show that he committed another crime distant from and having no relation to, or casual connection with, the one with which he was being tried. But that knowledge in the mind of the jury certainly could do him no good when they were trying him for the same kind of an offense.

As stated above, the only real question in this case was the extent of the punishment. There was no question of appellant's guilt. He frankly said he took part in the robbery. The jury administered the extreme penalty. It is evident that each and all of the errors mentioned above bore heavily upon the extent of the punishment. The argument that the jury should put him to death and not send him to the penitentiary, because he would shortly be pardoned or the sentence suspended, and he would again be turned loose upon the public; that he had used a pistol in the robbery, and that he had a few days before engaged in another hold-up, must have been very persuasive in bringing the jury to a death penalty verdict. We are impressed with the probability of this because the case does not, in fact, present exaggerating elements calling for such extreme penalty. Only a knife was used so far as Mr. Coen was concerned. He said that. He said he saw no pistol. No one was injured. This is a very harsh law, especially so where the penalty is death and yet there is no personal injury of any kind to anyone, and, as a matter of fact, under the circumstances of this

case, no real likelihood of personal injury. Three persons took part in this crime. So far as this record shows, appellant was largely influenced to go through with it by Smith. The place was a country store. Smith had lived nearby and knew the surroundings. He first urged appellant and White to go into the store and rob Mr. Coen while he, Smith, remained in the car. However, while Smith and White went into the store, their hearts failed them and they did not rob Mr. Coen. When they re-entered the automobile and were driving away, Smith urged that the crime be committed, saying this would be easy money, and then the three returned to the store and committed the crime while Mr. Coen sat in a chair. Appellant was the first to be tried. Presumably the other two have been or will be. Appellant offered to put them on the stand but they invoked their constitutional rights and refused to testify. On the record before us both are equally as guilty, and Smith more so, than appellant. If the other two are given the extreme penalty, which, by comparison with the guilt of appellant, ought to be done, then the State has exacted the lives of three persons for a robbery where no one was injured personally, and there was, under the circumstances, little likelihood of personal injury. While it is unlikely we would reverse the case for any one of the foregoing errors, standing alone, yet they were errors, and we are convinced that, taken together, and especially in connection with what is said hereafter, worked a great injustice on appellant.

On February 21, 1945, defendant was arraigned; the court refused to accept a plea of guilty and entered a plea of not guilty. He had no counsel at that time. The next day the court appointed counsel to represent him. Section 2505, Code 1942, empowers the trial judge to appoint counsel in such case and provides ". . . And the defendant shall be entitled to advice of such counsel before he is required to plead to the indictment." The district attorney offered to let the accused withdraw his plea and rearraign him. His counsel were permitted to move to

quash the indictment, which motion, being overruled, they demurred to the indictment, and the demurrer being overruled, a special venire was granted. In Robinson v. State, 178 Miss. 568, 173 So. 451, this Court said that while the statute is mandatory and should be observed in all capital cases, yet where it is shown no possible wrong was done accused, the error would be harmless. In that case, counsel appointed after arraignment, as here, was permitted to make a motion to quash the indictment and challenge the competency of the grand jurors. It does not appear in this case that appellant was prejudiced in the slightest by this action, and, therefore, is not now, and would not hereafter be, ground for reversal.

The court appointed John T. Armstrong and Miss Lena Zama as counsel for appellant. Mr. Armstrong filed a petition to be relieved of that duty and responsibility on the ground that because of his close business, professional and personal relation to Mr. C. C. Coen, the victim of the robbery and chief prosecuting witness, he would be embarrassed to represent appellant, and was apprehensive he might unconsciously fail to properly represent his client. He supported the petition by affidavit. Mr. Coen also testified to that close relationship, but said such representation by Mr. Armstrong would not affect the relation between them. The court denied the petition. The presentation of this situation to the court was commendable and a performance of a duty by the attorney, because the accused had a constitutional right to the services of an attorney free to devote his entire energies and ability, unembarrassed by other connections, to the defense of his case. The situation, as then confronting the trial judge, presented to him a delicate question, but the subsequent proceedings in this case have amply demonstrated the soundness and wisdom of his judgment. The test is whether the accused has been protected, so far as counsel can do so, in all of his legal rights. Tested by that rule, appellant certainly has no cause for complaint in this case. It is pertinent to that question, and not judi-

cially improper, for us to say, that seldom has a record come to this Court disclosing on the part of counsel for their client, the energy, skill and earnestness which counsel have put forth for appellant.

Reversed and remanded.

**Sydney Smith, C. J.,** took no part in this decision.