## WHITE v. STATE.

(In Banc. March 17, 1947. Suggestion of Error Overruled April 14, 1947.)

[29 So. (2d) 650. No. 36186.]

Luther E. Grice, of Crystal Springs, for appellant.

**Greek L. Rice**, Attorney General, by **Geo. H. Ethridge**, Assistant Attorney General, for appellee.

Argued orally by **Luther E. Grice**, for appellant, and by **Geo. H. Ethridge**, for appellee.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

Appellant was jointly indicted with Virgil Smith and John Augustine by the grand jury of Copiah County on

the charge of robbery of C. C. Coen by the exhibition of a certain pistol and large dirk knife. Section 2367, Code of 1942. A severance was granted and John Augustine was tried first, Augustine v. State, 201 Miss. 277, 28 So. (2d) 243. The appellant here, Howard White, was tried and convicted, with a sentence of electrocution. On appeal here he files several assignments of error, but we will discuss only those which we think are entitled to discussion.

An examination of the opinion of this court, ante, reveals that the proof in the instant case is stronger against apellant and differs materially in that regard from the evidence involving him in the Augustine case, supra. Here, for instance, the testimony of Mr. Coen was that Augustine held a large dirk against his throat menacingly when appellant was repeatedly exclaiming, ''Don't move, I'll shoot,'' while their codefendant Smith was rifling the shelves of merchandise and Mr. Coen's safe of several hundred dollars in money and also stealing a pistol. The store was in darkness, as the robbers had extinguished the lights. Mr. Coen did not see a pistol. In the Augustine case there was evidence introduced seeking to develop the idea that the pistol, if any were used, was a cap pistol, but there is no such evidence here.

In the Augustine case there was offered an explanation of the origin of a pistol recovered by the officers at the home of the mother of Smith, and the kind of pistol it was, as set out in the opinion. There is no such evidence in this case, although there is mentioned in one of the briefs that the pistol was an Iver Johnson. The record of the instant case reveals that the pistol stolen from Mr. Coen was a Colt revolver. The District Attorney made a determined effort to introduce the pistol recovered by the officers at the home of the mother of Smith into the evidence against appellant here. She denied its ownership, claimed it was not there until these three parties came to her home after the robbery.

The attorney for appellant insisted that the State had failed to identify this pistol as having been used in the robbery, and at the end of a preliminary skirmish between counsel, concerning the introduction of the pistol in evidence, the Court orally instructed the jury as follows: ''Gentlemen of the jury, you will disregard the statement made by this witness as to having found a pistol at Armstrong's house.'' The mother of Virgil Smith was then the wife of Armstrong, having remarried. Later the controversy with reference to the competency of the pistol in evidence was resumed. The District Attorney finally informed the Court: ''In the interest of time, I will withdraw that pistol.'' Notwithstanding this, the Court granted an instruction to the State, in its pertinent part, containing the following: ''If you believe from all the evidence in this case beyond a reasonable doubt that Howard White, Virgil Smith and John Augustine alias Skinny Augustine, on February 11th, 1946, did, wilfully, unlawfully, and feloniously make an assault upon C. C. Coen, a human being, with certain deadly weapons, towit: a pistol and a large dirk knife, by the exhibition of said deadly weapons,'' etc. This, the appellant urges, was error because inconsistent with the Court's oral instructions to the jury earlier, and also ignored the withdrawal of the pistol by the District Attorney, and was highly prejudicial to appellant.

This point would probably be well taken were it not for the fact that the State never proved what kind of pistol appellant, Howard White, had in the holdup; and because of the further fact that appellant made a full confession that he was then armed with a pistol. This confession is as follows: ''February 14, 1946. I, Howard White, make the following statement voluntary, without violence. I left Wesson Monday afternoon in the company of Virgil Smith, Skinny, Alabama Slim and myself. We drove out to Mr. Coen's store. Stopped to get oil and gas and while there robbed him of money, cigarettes and merchandise with a pistol. I held the pistol and

Skinny had the knife. Virgil Smith was the one who got the money and merchandise. We all got in the car and left there and went to John Armstrong's house, colored, about two and a half miles south of Wesson. John Armstrong's wife is the mother of Virgil Smith. Skinny took the knife, searched Mr. Coen and got money and watch.'' This confession was signed by Howard White, sworn to and subscribed before a notary and reduced to writing by a stenographer. There were several present who heard it and who also testified to the fact of the confession. This confession was admitted into the evidence without any challenge to its competency, except only a general objection. No reasons being assigned for the objection, it was overruled by the Court. We can see no error in admitting this confession, which of itself justified including in the instruction both pistol and dirk.

Appellant complains of certain refused instructions, some of which were obviously restatements of other instructions granted him. The Court committed no error in refusing to duplicate instructions. We find no error in the action of the Court in refusing appellant the other instructions requested and refused.

In the Augustine case, Augustine apeared as a witness for himself. Here the appellant relied solely upon the errors alleged to have been made by the court in the trial of the case. The opinion in the Augustine case discloses that the erorrs, because of which we reversed it for a new trial, were not repeated in the trial of the case at bar. Indeed, we find no reversible error in the court below, and are of the opinion that we should, and we do, affirm its judgment. The date of execution is fixed as Friday, April 18, 1947.

**Sydney Smith, C. J.,** delivered a concurring opinion.

I am genuinely sorry that because of the faultless rulings of the court below we have been unable to find there-

in an error on which to grant the appellant a new trial,—not because of any apprehension on my part that the jury may have erred in finding the appellant guilty, but because of the barbarous, cruel, and inhuman sentence imposed on him by it. I concede that the sentence is not such within the meaning of Section 28 of our Constitution; but it is such in fact.

At the beginning of the last century, practically all crimes at common law above the grade of misdemeanors were punishable by death. But this was so revolting to the common sense of mankind and so contrary to the promptings of humanity that in the early 1800's parliament began to eliminate crimes from this punishment, so that now, and for almost a century, capital punishment in England has applied only to "murder, treason, certain forms of piracy, or setting fire to the King's ships or arsenals." 9 Halsbury's Laws of England, 2d Ed., 225.

The same course was pursued in English-speaking America, and in 1839, the crimes punishable by death in Mississippi were treason, murder, and arson in the first degree, i. e., committed by "wilfully setting fire to, or burning, in the nighttime, a dwelling house in which there shall be, at the time, some human being." Rape was added to this list by Section 2942, Code 1880, and arson was eliminated therefrom by Chapter 272, Laws 1932, at which session, the Legislature, strange to say, took the backward step of adding the death penalty to the crime of robbery by the exhibition of a deadly weapon. The first death penalty imposed under this statute was for the robbery of a minister of the Gospel, and I well remember, for I shared therein, the mental distress it caused him. In response to the familiar argument that one who exhibits a deadly weapon when committing a robbery will probably use it if necessary for the accomplishment of his purpose, a sufficient answer should be that the law does not permit this penalty to be inflicted on one who, intending to commit murder, inflicts a wound with a deadly weapon on his intended victim for that purpose, but

which, contrary to the intention of the would-be murderer, turns out to be insufficient to produce death.

I hope that I shall live long enough to see this blot on our criminal law—this evidence that something of the savage still lingers in us—erased by the Legislature repealing this statute.

**L. A. Smith, Sr., J.,** concurs in this opinion.

**Griffith, J.,** delivered a specially concurring opinion.

As to some crimes deliberately done, as, for instance, murder when it amounts to assassination, I think we must of necessity retain the death penalty.

The trouble with the death penalty has been in the practical administration by the juries. Here comes one case where the offense scarcely amounts to more than manslaughter, but the death sentence is carried by the verdict, and along with it comes another as black as night and the verdict is for a penitentiary sentence. In this respect the statute on robbery with a deadly weapon has furnished a fertile field for this difference in treatment which, if it may not be called favoritism, is no better. The average citizen with just and honest instincts does not look with approval, to say the least, upon this sort of action.

Time and again when the robbery is committed by two or more, and by the exhibition of a deadly weapon, and this is more often the case than when by one alone, the ring leader will get off with a penitentiary sentence, sometimes as low as ten years, while his aiders, although followers only, will be sentenced to death. In this particular case there were three participants; two of them have been sentenced to death, but the ring leader apparently has not yet been tried. When he is tried, predicting upon the experiences in the past in such cases, the chances are that he will receive something less than the death sentence. The opportunity for this sort of abuse ought not to be kept in existence save in those crimes which

make it imperatively necessary, and such is not the case in robberies where nobody is hurt. I concur, therefore, with the Chief Justice in what he has said with regard to this particular statute in so far as concerns the death sentence feature of it.

**L. A. Smith, Sr., J.,** concurs in this opinion.