917 So.2d 120 (2005)
David Cleo PARKER, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02593-COA.
Court of Appeals of Mississippi.
November 8, 2005.
*121 James W. Amos, Hernando, attorney for appellant.
Office of Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
EN BANC.
IRVING, J., for the Court.
¶ 1. A DeSoto County jury found David Cleo Parker guilty of rape. Feeling aggrieved, he appeals his conviction and asserts the following: (1) the court below should have granted Parker's motion for a directed verdict, request for peremptory instruction, or his motion for a judgment notwithstanding the verdict; and (2) his conviction is void because the statute under which he was convicted is unconstitutional.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Fifteen-year-old A.B.[1] was babysitting for thirty-nine-year-old Parker in July 2001, while he went to work. When Parker returned home around one in the morning, he offered A.B. alcohol, which she accepted.[2] Specifically, A.B. testified that she drank what she thought was vodka and coke in a big cup. A.B. eventually got to the point where she could not see ten inches in front of her face, and she then went back to a bedroom where she attempted to sleep. Parker pulled her off the bed, and A.B.'s next memory was of waking up naked in Parker's bed. She did not know what time it was and did not remember having sex with Parker.
¶ 4. A.B. did not tell anyone about the incident until she discovered she was six months pregnant. DNA testing showed that the probability that Parker was the father of A.B.'s child was 99.996%. Parker was subsequently indicted on a count of rape under section 97-3-65(4) of the Mississippi Code of 1972 as amended, which prohibits "sexual intercourse ... with any person without that person's consent by administering to such person any substance or liquid ... as to prevent effectual resistance...." MISS.CODE ANN. § 97-3-65(4)(a) (Rev.2000). At the close of trial, Parker was convicted and sentenced to thirty years (twenty-five years suspended). Additional facts follow as necessary below.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Sufficiency of the Evidence
¶ 5. Parker's argument that the trial court erred in denying his motion for directed verdict, request for peremptory instruction, and judgment notwithstanding the verdict is actually an argument that the evidence is insufficient to sustain his conviction. A verdict will only be reversed on appeal for insufficiency of the evidence if "the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." McClain v. State, 625 So.2d 774, 778 (Miss. *122 1993) (citing Wetz v. State, 503 So.2d 803, 808 (Miss.1987); Harveston v. State, 493 So.2d 365, 370 (Miss.1986); Fisher v. State, 481 So.2d 203, 212 (Miss.1985)). All credible evidence that supports Parker's conviction must be accepted as true. Id. After reviewing the record, we find that there was sufficient evidence to support Parker's conviction.
¶ 6. In a case with somewhat similar facts to this one, a girl alleged that she was raped by her uncle and later became pregnant as a result of the assault. Howard v. State, 417 So.2d 932, 933 (Miss. 1982). At trial, the victim testified as to the nature of the specifics of the assault and offered the fact of her pregnancy as corroborating evidence that the assault had occurred. Id. Her uncle was convicted, but on appeal the Mississippi Supreme Court reversed, holding that the pregnancy was insufficient proof of the identity of the victim's rapist because the pregnancy proved only sexual intercourse with someone generally, not any specific individual. Id. However, Howard was decided without the benefit of DNA paternity testing.
¶ 7. Parker, admitting that DNA testing can corroborate a rape victim's testimony as to the identity of her assailant, urges us to find that Howard is distinguishable from his case because A.B. gave no testimony that he had unlawful sex with her, and therefore, there is no testimony for the pregnancy to corroborate. We disagree. A.B. testified that she became very drunk and blacked out; when she awoke, she was naked in Parker's bedroom. Although she testified that she did not know whether she had been sexually assaulted, it became clear several months later, when she discovered she was pregnant, that Parker had sexually assaulted her while she was blacked out.[3] The subsequent birth and DNA match corroborate the sexual assault.
¶ 8. Parker also asserts that the State failed to prove anything regarding A.B.'s state of mind or body. However, A.B. testified that (1) she was so drunk she could not see her hand in front of her face, (2) she attempted to go in another room to sleep, (3) she remembered Parker dragging her off a bed, and (4) she blacked out and remembered nothing until she awoke nude in Parker's bedroom. These facts clearly show that A.B. was rendered mentally and physically unable to resist Parker's advances. A.B.'s testimony regarding the effect that the alcohol had on her is sufficient to show that it was Parker's administration of alcohol that caused A.B. to be unable to resist or consent to his sexual advances:
A. I had like  it was like  I think it was Vodka and Coke. Yeah.
Q. So did he give those to you?
A. Yes, sir.
Q. Do you remember how many you had?
A. One. It was like a  it was not a Crown Royal cup but just like it, about that big....
Q. Well, what did that do to you?
A. I got to the point I couldn't see. Like, I don't know how many. Like about, probably about ten inches in front of my face....
Q. What do you remember next?
A. I walked  tried to walk back to the bedroom, and I got in there, and I was like so drunk I tried to pass out on the bed in the girl's room ... he started dragging me off the bed. And he said, "I told you I wasn't lying when I talked to you on the *123 phone,"[4] and he started dragging me off the bed.
The jury was reasonable in inferring from this testimony that it was the alcohol Parker gave A.B. that rendered her unable to resist Parker's advances. Additionally, we note that Parker's argument on this point would mean that no victim of a date-rape drug could ever prove her attacker assaulted her, since she would be passed out during the actual sexual assault. Such a result is clearly incorrect.
¶ 9. Parker also argues that there is no evidence of A.B.'s non-consent to any sexual activities. However, an unconscious person cannot consent to sexual activity: "It is impossible for a person who is unconscious to consent to a sexual act...." Trigg v. State, 759 So.2d 448, 450(¶ 5) (Miss.Ct.App.2000). When Parker chose to engage in sexual activity with A.B. while she was passed out, he engaged in sexual contact with her without her consent because it was impossible for her to consent at that time. Parker asserts that the evidence at trial clearly showed that any contact between him and A.B. was consensual. We find this characterization of the incident to be unsubstantiated. Although A.B. could not remember any actual sex act, she testified (in response to a question about whether or not she had told anyone what happened) that: "I was too scared to say anything." There is nothing in the record to reflect that any sexual contact between Parker and A.B. was asked for by A.B. or consented to by her. Her feelings regarding what she feared might have happened refute Parker's assertion that any sexual act was consensual.

(2) Constitutionality of Section 97-3-65(4)(a)
¶ 10. Parker filed a motion for a new trial in which he challenged the constitutionality of Mississippi Code Annotated section 97-3-65(4)(a) (Rev.2004) on the basis of vagueness and ambiguity. Without comment, the trial court denied the motion. Parker brings forth to this Court his constitutional challenge.[5] When reviewing challenges to the constitutionality of a statute, the "party challenging the constitutionality of a statute must prove his case by showing the unconstitutionality of the statute beyond a reasonable doubt." Jones v. State, 710 So.2d 870, 877 (Miss. 1998) (citing Vance v. Lincoln County Dep't of Pub. Welfare, 582 So.2d 414, 419 (Miss.1991)). Statutes enjoy a strong presumption of validity and all doubts must be resolved in favor of the validity of a statute. Id.
¶ 11. Parker specifically alleges that section 97-3-65(4)(a)[6] is unconstitutional *124 because it is vague. A statute will be found unconstitutional for vagueness when the statute "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." Roberson v. State, 501 So.2d 398, 400 (Miss.1987) (quoting United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954)). A statute will also be void for vagueness where it "encourages arbitrary and erratic arrests and convictions." Id. (quoting Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972)). We find that section 97-3-65(4)(a) sufficiently puts individuals on notice as to what behavior will constitute an offense. There is simply no way for Parker to reasonably argue that he believed his behavior was legal when he gave A.B. enough alcohol to make her pass out and then proceeded to sexually assault her while she was unconscious. This behavior clearly violates the statute, and Parker knew or should have known that his conduct was prohibited by the statute.
¶ 12. Parker contends that the statute is unconstitutionally vague because it does not define several terms. Specifically, Parker argues that the statute is vague because it fails to define "substance or liquid." We find that "substance or liquid" needs no further definition  it means what the statute implies it to mean: any substance or liquid. If someone was administered peanuts or insulin, there would still be a violation of the statute if she passed out as a result of ingesting the peanuts or insulin and was subsequently assaulted.
¶ 13. Parker further argues that "administering" is not defined. However, we find that an ordinary person would have fair notice that giving a minor a large cup of alcohol constitutes "administering." "Administering" does not require that the individual literally inject the victim with a substance or place a liquid in the victim's drink. A person of ordinary intelligence would know that giving a young woman enough alcohol to make her pass out constitutes "administering" for the purpose of the statute.
¶ 14. Parker next contends that "imbecility of mind" and "weakness of body" are inadequately defined. We find that those terms need no further explanation because the statute is clear as to their meaning: if a victim is unable to mentally or physically resist or consent to an assault, the statute is violated. Parker cannot reasonably contend that he did not know that when A.B. passed out she was suffering from "imbecility of mind" or a "weakness of body" or, in this case, both. In short, although we acknowledge that as section 97-3-65(4)(a) is poorly written, we do not find that Parker has proved that the statute is unconstitutionally vague. It is clear from a reading of the statute that the statute is intended to prohibit and penalize someone who administers to another a substance or liquid that causes the other to be incapable of consenting or resisting sexual intercourse, and thereafter proceeds to have sexual intercourse with the incapacitated individual.
¶ 15. Parker also argues that section 97-3-65(4)(a) is unconstitutional for failing to provide any mental state requirement. It is true that the statute defines no required mens rea. However, the evidence presented at trial was still more than sufficient to show that Parker acted with a criminal mental state when he knowingly and/or intentionally gave A.B. large quantities *125 of alcohol which caused her to eventually pass out and then raped her.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF RAPE AND SENTENCE OF THIRTY YEARS WITH TWENTY-FIVE SUSPENDED AND FIVE TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] The victim's initials have been used instead of her name in order to protect her identity.
[2] Prior to going to work, Parker gave A.B. a beer.
[3] There is no evidence that A.B. and Parker had sex on any other occasion.
[4] Earlier in the day, A.B. had received telephone calls from Parker in which he said things like "You just wait till I get home." A.B. testified that she believed Parker was talking about sex during these phone calls.
[5] Mississippi Code Annotated section 9-4-3 (Rev.2002) provides that the Mississippi Supreme Court shall retain appeals in cases where "a statute [has been] held unconstitutional by the lower court." Since the trial court did not hold section 97-3-65(4)(a) unconstitutional, we are authorized upon assignment from the supreme court to decide Parker's constitutional issue.
[6] This section of the statute reads in full: "Every person who shall have forcible sexual intercourse with any person, or who shall have sexual intercourse not constituting forcible sexual intercourse or statutory rape with any person without that person's consent by administering to such person any substance or liquid which shall produce such stupor or such imbecility of mind or weakness of body as to prevent effectual resistance, upon conviction, shall be imprisoned for life in the State Penitentiary if the jury by its verdict so prescribes; and in cases where the jury fails to fix the penalty at life imprisonment, the court shall fix the penalty at imprisonment in the State Penitentiary for any term as the court, in its discretion, may determine." MISS.CODE ANN. § 97-3-65(4)(a) (Rev.2000).