MAXWELL, J., for the Court:
 

 ¶ 1. A jury in the Circuit Court of Forrest County found Shauntell Summerall guilty of possession of a dirk knife by a convicted felon, in violation of Mississippi Code Annotated section 97-37-5 (Supp. 2009). The circuit court sentenced him to ten years in the custody of the Mississippi Department of Corrections (MDOC). Summerall now appeals claiming (1) section 97-37-5 is unconstitutionally vague as it applies to possession of a “dirk knife”; (2) the State offered insufficient evidence that Summerall possessed a dirk knife; and (3) the guilty verdict is against the overwhelming weight of the evidence.
 
 *731
 
 Finding the evidence insufficient to establish the knife at issue is a “dirk knife,” we reverse Summerall’s conviction, render a judgment of acquittal and discharge Sum-merall.
 

 FACTS
 

 ¶ 2. At approximately 1:15 a.m. on September 12, 2007, Hattiesburg Police Officer Chris Hensley heard loud music coming from a car stereo. He discovered Summerall standing outside the vehicle and informed him of a local ordinance prohibiting loud music.
 

 ¶ 3. Summerall appeared nervous and refused Officer Hensley’s requests to remove his hands from his pockets. Because of safety concerns, Officer Hensley proceeded to pat him down. During the search, Officer Hensley found a sheathed “fixed-blade knife” in Summerall’s back right pants’ pocket. Summerall, who had a prior conviction for armed robbery, was arrested and later charged with possession of a dirk knife by a convicted felon.
 

 ¶ 4. At trial, two Hattiesburg police officers testified the knife at issue is a dirk knife. Defense counsel questioned each officer extensively about their knowledge of dirk knives and pointed to inconsistencies in the officers’ descriptions as they related to various definitions of dirk knives.
 

 ¶ 5. During its deliberation, the jury sent a note to the circuit judge, which asked: “May we have the pages from the internet defining what a dirk knife is?” But the circuit judge denied the request and instructed the jury to continue its deliberations. The jury found Summerall guilty. The circuit judge denied Summe-rall’s motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial.
 

 DISCUSSION
 

 I. Vagueness
 

 ¶ 6. Summerall contends the statute is unconstitutionally vague because it provides insufficient notice of the contemplated conduct it prohibits. “When reviewing challenges to the constitutionality of a statute, the ‘party challenging the constitutionality of a statute must prove his case by showing the unconstitutionality of the statute beyond a reasonable doubt.’”
 
 Parker v. State,
 
 917 So.2d 120, 123 (¶ 10) (Miss.Ct.App.2005) (quoting
 
 Jones v. State,
 
 710 So.2d 870, 877 (¶ 29) (Miss.1998)). Further, statutes are presumed valid, and all doubts must be resolved in favor of validity.
 
 Id.
 
 (citing
 
 Jones,
 
 710 So.2d at 877 (¶ 29)).
 

 ¶ 7. When a statute is challenged for vagueness, we consider “whether the statute defines the criminal offense with sufficient definiteness such that a person of ordinary intelligence has fair notice of what conduct is prohibited.”
 
 Lewis v. State,
 
 765 So.2d 493, 499 (¶25) (Miss.2000) (citing
 
 Posters ‘N’ Things, Ltd. v. United States,
 
 511 U.S. 513, 525, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994));
 
 Roberson v. State,
 
 501 So.2d 398, 400 (Miss.1987). In
 
 Kolender v. Lawson,
 
 461 U.S. 352, 357-58, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), the United States Supreme Court instructed:
 

 [T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. ... Where the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections.
 

 
 *732
 

 Id.
 
 (internal citations and quotations omitted).
 

 ¶ 8. Section 97-37-5 prohibits convicted felons from possessing certain specified weapons:
 

 (1) It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm or any bowie knife,
 
 dirk knife,
 
 butcher knife, switchblade knife, metallic knuckles, blackjack, or any muffler or silencer for any firearm unless such person has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the United States Code, or has received a certificate of rehabilitation pursuant to subsection (3) of this section.
 

 (2) Any person violating this section shall be guilty of a felony and, upon conviction thereof, shall be fined not more than Five Thousand Dollars ($5,000.00), or committed to the custody of the State Department of Corrections for not less than one (1) year nor more than ten (10) years, or both.
 

 Miss.Code Ann. § 97-37-5 (emphasis added). Summerall challenges the statute as unconstitutionally vague and argues it does not inform those subject to it what conduct on their part will trigger criminal liability. We disagree.
 

 ¶ 9. Section 97-37-5 explicitly prohibits convicted felons from possessing dirk knives. Indeed, the term “dirk knife” is prominently listed among the four specific knives that, if merely possessed by convicted felons, give rise to criminal liability. A statute is not rendered unconstitutionally vague merely because its words or terms are not specifically defined.
 
 Madere v. State,
 
 794 So.2d 200, 210-11 (¶¶ 20-25, 27) (Miss.2001) (holding statutory-rape statute not unconstitutional on vagueness grounds despite failure to specifically define “forcible”). Rather, the statute’s terms need only be sufficiently definite to fairly apprise a person of ordinary intelligence of the prohibited conduct.
 
 E.g., Lewis,
 
 765 So.2d at 499 (¶ 25).
 

 ¶ 10. Here, we find Summerall fails to establish the unconstitutionality of section 97-37-5 beyond a reasonable doubt and is unable to overcome the strong presumption of the statute’s validity. As directed, we resolve any doubt in favor of the statute’s validity. Given that Summerall fails to demonstrate an individual of ordinary intelligence would not comprehend the prohibited conduct, we find this issue lacks merit.
 

 II. Sufficiency of the Evidence
 

 ¶ 11. Summerall argues the circuit court erred in denying his motion for JNOV or, in the alternative, a new trial. Specifically, he contends the State offered insufficient evidence to prove the knife in question was a prohibited dirk knife. We review the denial of a motion for a JNOV as follows:
 

 Upon reviewing a denial of the motion for judgment notwithstanding the verdict, this Court will consider the evidence in the light most favorable to the appellee (the state), giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant (the defendant) that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
 
 *733
 
 The above standard of review, however, is predicated on the fact that the trial judge applied the correct law.
 

 Woods v. State,
 
 19 So.3d 817, 819 (¶ 6) (Miss.Ct.App.2009) (quoting
 
 Moore v. State,
 
 873 So.2d 129, 132 (¶ 13) (Miss.Ct. App.2004)). When considering a challenge to the sufficiency of the evidence, “we weigh the evidence in the light most favorable to the verdict.”
 
 Id.
 
 at (¶ 7) (citing
 
 Bush v. State,
 
 895 So.2d 836, 844 (¶ 18) (Miss.2005)). We will not reverse a jury verdict unless convinced the circuit court abused its discretion by denying a new trial, or the final verdict results in an unconscionable injustice.
 
 Id.
 
 at 819-20 (¶ 7) (citing
 
 Ford v. State,
 
 753 So.2d 489, 490-91 (¶ 8) (Miss.CLApp.1999)).
 

 ¶ 12. The indictment charged Summe-rall with “knowingly and willfully possessing] a weapon/firearm, to-wit: a dirk knife,” after having been previously convicted of armed robbery, in violation of Mississippi Code Annotated section 97-37-5. The parties stipulated to SummeraU’s felony status and did not seriously contest his possession of the knife. The central issue at trial, and now on appeal, is whether Summerall possessed a “dirk knife.”
 

 ¶ 13. Summerall contends none of the testifying officers gave concrete, much less workable, definitions of the term dirk knife. Officer Hensley claimed the knife at issue is commonly referred to as a dirk knife. But he admitted the knife is similar to many hunting knives and camping knives around the country. He explained the knife at issue qualified as a dirk knife because it had a fixed-blade, and the length of the knife was over six inches. During his cross-examination by Summe-rall’s attorney, the following exchange occurred:
 

 Q. Would you disagree with the Webster’s dictionary definition of a dirk knife as being a clasp knife being a folding knife having a large dirk-like blade?
 

 A. No, sir.
 

 Q. Do you know what a dirk-like blade is?
 

 A. A dirk-like blade?
 

 Q. What a dirk is?
 

 A. No, sir.
 

 Q. Then, you wouldn’t disagree with definitions found in Webster’s and Funk and Wagnalls dictionaries that a dirk is a double-edged blade or dagger? You wouldn’t disagree with that, would you?
 

 A. No, sir.
 

 Former Hattiesburg Police Officer Michael Walker testified that he learned “in the military, anything that had a straight fixed blade usually with one edge we would call a dirk knife.” Officer Mark Mitchell testified that he found the term dirk knife in the Mississippi Code. But he acknowledged the term was not defined by statute. He did not offer a definition of the qualifying characteristics.
 

 ¶ 14. Before Summerall’s release from prison, Summerall had been advised by an MDOC officer that as a felon he could no longer possess certain items such as dirk knives. However, at trial, the officer admitted she did not explain or define the term “dirk knife.”
 

 A. What is a dirk knife?
 

 ¶ 15. This Court is confronted with a matter of first impression in Mississippi jurisprudence. The Mississippi Legislature has never defined the term “dirk knife.”
 
 [1]
 
 Nor has our supreme court,
 
 *734
 
 though the term has been mentioned in the facts of quite a few cases.
 
 See Craig v. State,
 
 660 So.2d 1298, 1303 (Miss.1995) (Smith, J., dissenting);
 
 Holmes v. State,
 
 537 So.2d 882, 883 (Miss.1988);
 
 Belina v. State,
 
 228 Miss. 330, 332, 87 So.2d 919, 920 (1956);
 
 Duckworth v. State,
 
 209 Miss. 318, 319, 321, 46 So.2d 787, 787-88 (1950);
 
 Shaffer v. State,
 
 46 So.2d 545, 546 (Miss. 1950);
 
 Riley v. State,
 
 208 Miss. 336, 339-40, 44 So.2d 455, 456-57 (1950);
 
 White v. State,
 
 201 Miss. 556, 559-61, 29 So.2d 650, 650-51 (1947); and
 
 Augustine v. State,
 
 201 Miss. 277, 289, 28 So.2d 243, 246 (1946). Absent a specific definition, we must apply the common and ordinary acceptation and meaning to the term. Miss.Code Ann. § 1-3-65 (Rev.2005). This presents an interesting task.
 

 ¶ 16. From the outset, we note the terms “dirk” and “dirk knife” differ but have been used interchangeably by courts across the country when addressing the offending characteristics of various types of knives alleged to be prohibited by each state’s laws.
 

 ¶ 17. The Oxford English Dictionary defines a dirk as a “a kind of dagger or poniard,” specifically “[t]he dagger of a Highlander,” or “[a] small sword or dagger formerly worn by junior naval officers on duty.” 4 The Oxford English Dictionary 709 (2d ed.1989). It defines a dirk knife as “a large clasp-knife with a dirk-shaped blade.”
 
 Id.
 
 Webster’s dictionary defines a dirk as “a long straight-bladed dagger.” Webster’s Third New International Dictionary Unabridged 642 (1986). Many state courts have adopted similar definitions.
 

 ¶ 18. The Nebraska Supreme Court has held “[a] ‘dirk’ is ‘a long straight-bladed dagger formerly carried ... by Scottish Highlanders,’ or ‘a short sword formerly worn by British junior naval officers.... A ‘knife with a dirk blade attachment’ must mean a knife with a long straight blade.”
 
 State v. Williams,
 
 218 Neb. 57, 352 N.W.2d 576, 579 (1984). The Appeals Court of Massachusetts has applied similar definitions.
 
 See Commonwealth v. Miller,
 
 22 Mass.App.Ct. 694, 497 N.E.2d 29, 29 (1986) (holding “[a] dirk is a long straight-bladed dagger or short sword usually defined by comparison with the ceremonial weapons carried by Scottish [Hjighlanders and naval officers.... A ‘dirk knife’ is a ‘clasp knife,’ or large pocket knife, ‘having a large blade like that of a dirk.’ ”).
 

 ¶ 19. The Supreme Court of Nevada agrees that “in most cases a dirk appears to be simply a type of dagger.”
 
 Knight v. State,
 
 116 Nev. 140, 993 P.2d 67, 72 (2000). The Oregon Court of Appeals has explained that a dirk is a type of dagger, “being one that is long and straight, with a blade of approximately 18 inches.”
 
 State v. McJunkins,
 
 171 Or.App. 575, 15 P.3d 1010,1012 (2000).
 

 B. Traditional Test
 

 ¶ 20. Recently, the Court of Appeals of Virginia in
 
 McMillan v. Commonwealth,
 
 55 Va.App. 392, 686 S.E.2d 525 (2009), conducted a thorough analysis of the traditional qualifying characteristics of dirks and dirk knives. The Virginia court addressed a statute prohibiting felons from possessing concealed dirk or bowie knives as well as “any weapon[s] of like kind.”
 
 Id.
 
 at 527 (citing Va.Code Ann. § 18.2-308.2(A) (Repl.Vol.2008)). In
 
 McMillan,
 
 the subject knife bore similar size characteristics to the knife at issue in the present case. It had a total length of eight-and-one-half inches, and the blade was less than four inches.
 
 Id.
 
 at 526. The court described the knife as smooth on one side and rigid on the other.
 
 Id.
 

 
 *735
 
 [[Image here]]
 

 ¶ 21. In considering whether the
 
 McMillan
 
 knife qualified as a dirk knife or had dirk-like features, the appellate court reviewed prior Virginia decisions that:
 

 previously defined a “dirk” as “a long straight-bladed dagger” or “a short sword.”
 
 Wood v. Henry County Public Schools,
 
 255 Va. 85, 95 n. 6, 495 S.E.2d 255, 261 n. 6 [ (1998) ] (quoting Webster’s Third New International Dictionary 642 (1981));
 
 see also Richards v. Commonwealth,
 
 18 Va.App. 242, 246 n. 2, 443 S.E.2d 177, 179 n. 2 (1994) (defining a dirk as “any stabbing weapon having two sharp edges and a point, including daggers, short swords, and stilettos”). A “dagger” is “a short knife used for stabbing,” and its definition refers to a “stiletto.” Webster’s Third New International Dictionary 570 (1993). However, the definition of a “stiletto” is not particularly helpful, as it is defined as “a slender dagger with a blade that is thick in proportion to its breadth.”
 
 Id.
 
 at 2243. The definition of a “sword” is more instructive: “a weapon with a long blade for cutting or thrusting set in a hilt usually terminating in a pommel and often having a tang or a protective guard where the blade joins the handle.”
 
 Id.
 
 at 2314.
 

 Id.
 
 at 527 (quoting
 
 Thompson v. Commonwealth,
 
 277 Va. 280, 673 S.E.2d 469, 473 (2009)). The
 
 McMillan
 
 court gave particular emphasis to the fact that a dirk is a stabbing weapon and may be defined as a short sword.
 
 Id.
 
 at 528. In applying these traditional characteristics, the court ultimately reversed McMillan’s conviction, finding that:
 

 Unlike a dirk, the knife McMillan possessed lacked a “long blade” and a “protective guard where the blade meets the handle” or a “hilt ... terminating in a pommel.” As previously stated, the blade on McMillan’s knife could hardly be described as long in that it measured approximately 3.75 inches. Further observation reveals that McMillan’s knife does not fit the definition of a dirk, described as any stabbing weapon having two sharp edges and a point. The knife at issue has one sharp edge and one manifold edge; approximately half of which is serrated and the remainder of which is blunt. The blunt portion culminates in the point, making its stabbing capability dubious.
 

 Id.
 
 (citation omitted).
 

 ¶ 22. Summerall’s knife was discovered in a sheath depicting the insignia of the Winchester Repeating Arms Company. However, the record contains only a photograph of the knife and sheath, and does not mention the origin or identity of the knife’s manufacturer.
 

 
 *736
 
 [[Image here]]
 

 ¶ 23. We note that here, under the traditional test applied in
 
 McMillan,
 
 Summe-rall’s knife’s four-inch blade cannot be considered long. Indeed, Summerall’s knife bears almost the exact overall length and blade length as the knife in
 
 McMillan.
 
 And like the knife in
 
 McMillan,
 
 it lacks a “hilt ... terminating in a pommel.” Though the knife at issue could be considered to have a protective guard, we find it has one sharpened edge and one blunt edge, as did the
 
 McMillan
 
 knife, which the appellate court found insufficient to show it possessed dirk-like qualities.
 

 C. Modern Test
 

 ¶ 24. A New York appellate court has illustrated, what our own research and common sense dictates — though the term “dirk” once referred to a long, straight-bladed dagger used particularly by Scottish Highlanders, the term no longer has the “generally accepted meaning today that it had in the 18th and 19th centuries.”
 
 In re Jesse QQ,
 
 243 A.D.2d 788, 789, 662 N.Y.S.2d 851 (N.Y.App.Div.1997). In order to promote justice and affect the objects of the law, the New York court revised the definition. The
 
 Jesse
 
 court held the “modern test for a dirk is whether the instrument has a blade with a least one sharpened edge which tapers to a point and is primarily intended for use as a stabbing weapon.”
 
 Id; see also People v. Richards,
 
 22 Misc.3d 798, 869 N.Y.S.2d 731, 735 (N.Y.Crim.Ct.2008) (recognizing the modern definition of a dirk).
 

 ¶ 25.
 
 Jesse
 
 involved a palm knife with an overall length of 2 3/4 inches, including a rubber grip 1 1/4 inch wide. The court described the characteristics of the knife’s blade as the “size and shape of an arrowhead. One edge is sharpened and serrated; the other edge is not sharpened.”
 
 Jesse,
 
 243 A.D.2d at 789, 662 N.Y.S.2d 851. The handle “fits into and rests against the palm of the hand with the blade protruding from between the middle fingers, a design which actually increases its effectiveness as a stabbing weapon.”
 
 Id.
 
 at 789-90, 662 N.Y.S.2d 851.
 

 ¶ 26. Here, the State suggested at oral argument that New York’s modern test in
 
 Jesse
 
 bolsters its argument that Summe-rall’s knife qualifies as a prohibited dirk knife. In
 
 Jesse,
 
 the New York court found the small palm knife had “no utilitarian purpose” because its “physical characteristics [made] it suitable primarily, if not exclusively, for stabbing.”
 
 Id.
 
 at 790, 662 N.Y.S.2d 851.
 

 ¶ 27. The New York court’s reasoning contradicts the State’s concession at oral argument before this Court that Summe-
 
 *737
 
 rail’s knife could be used for utilitarian purposes such as hunting and fishing. The State’s admission is also consistent with Officer Hensley’s acknowledgment at trial that Summerall’s knife is “similar to hundreds of thousands of hunting knives and camp knives that are floating around the United States.” Further, there is no conflicting evidence in the record that Sum-merall’s knife lacks common utilitarian purposes. Nor is there testimony to show his knife is “suitable primarily, if not exclusively for stabbing.” The State even admitted during oral argument it is unaware that any other court has ever held that a knife like the one before us qualifies as a dirk knife.
 

 ¶ 28. The State suggests Mississippi should employ a standard based on the subjective intent of the possessor. However, to do so would require revisions to section 97-37-5, which as it stands employs a strict-liability standard prohibiting the mere possession of a dirk knife by a felon — regardless of the intended use.
 

 ¶ 29. While we find no single characteristic determinative of whether a knife qualifies as a dirk knife, it is clear traditional dagger-like characteristics are lacking here. And under the modern approach, though Summerall’s knife could be used to stab, there is no indication from the record or our review that it is suitable primarily or exclusively for stabbing. Further, we find no precedential support for Officer Hensley’s explanation that mere fixed-blade knives, over six inches in total length, qualify as dirk knives. Officer Walker’s testimony also falls short under both the traditional and modern tests. Defense counsel argued that dirk knives must have a clasp blade. However, we find this characteristic immaterial as our review suggests dirk knives may have a clasp or fixed blade.
 

 ¶ 80. Though the knife in question, much like a pocket knife, box cutter, bali-song knife, or steak knife, could be a dangerous instrument in the hands of a person with criminal intent, the issue before us is what the statute proscribes as unlawful, not simply what might be dangerous. While we certainly understand the potential dangers involved when convicted felons possess knives, we are bound to apply the law as it exists.
 

 ¶ 31. Viewing the evidence in the light most favorable to the State and considering the qualifying characteristics under both the traditional and modern tests for dirks and dirk knives, we find the knife at issue is not prohibited by Mississippi law. Thus, we need not address the weight of the evidence.
 

 ¶ 32. To provide further guidance to law enforcement, prosecutors, and citizens of Mississippi, we draw from established precedent and both the traditional and modern views and hold that to qualify as a dirk knife, the weapon must: (1) have a blade with at least one sharpened edge which tapers to a point and (2) be designed primarily for use as a stabbing weapon. We decline to expand the reach of section 97-37-5 to prohibit the possession of all fixed-blade knives of certain length as restraint dictates that broader application would require legislative action.
 

 ¶ 33. THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT IS REVERSED, A JUDGMENT OF ACQUITTAL IS RENDERED, AND THE APPELLANT IS DISCHARGED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
 

 LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., DISSENTS
 
 *738
 
 WITHOUT SEPARATE WRITTEN OPINION. KING, C.J., AND CARLTON, J., NOT PARTICIPATING.
 

 [1]
 

 . We note Mississippi Code Annotated section 97-37-1 (Supp.2009) prohibits the concealed carrying of specified weapons, including dirk knives. Though the term dirk knife is not defined, this section contains misdemeanor penalties and also enhanced penalties for sec
 
 *734
 
 ond-time offenders, with felony status applicable for third-time offenders.